# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #032

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **30th day of June, 2015**, are as follows:

**BY CLARK, J.**:

2014-C -2362    RICHARD L. REYNOLDS v. ROBERT J. BORDELON III, ROBERT J. BORDELON JR., USAGENCIES CASUALTY INSURANCE COMPANY, AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE, AND/OR AUTO CLUB FAMILY INSURANCE COMPANY D/B/A TRIPLE A INSURANCE, NISSAN NORTH AMERICA, INFINITY DIVISION OF NISSAN NORTH AMERICA, INC., A LUXURY CAR DIVISION OF NISSAN MOTORS, INSURANCE AUTO AUCTIONS CORP., ABC INSURANCE COMPANY, DEF INSURANCE COMPANY AND XYZ INSURANCE COMPANY C/W STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AS SUBROGEE OF/AND LINDA DUPUY v. ROBERT BORDELON AND USAGENCIES CASUALTY INSURANCE COMPANY (Parish of St. Tammany)

We find the petition alleges sufficient facts to support a breach of contract cause of action. Thus, we reverse the judgment that granted the exception of no cause of action and remand to the trial court for consideration of the contract claim. We offer no opinion as to the ultimate success of this cause of action or to any defense thereto.
REVERSED AND REMANDED.

WEIMER, J., additionally concurs and assigns reasons.
CRICHTON, J., additionally concurs and assigns reasons.

06/30/15

SUPREME COURT OF LOUISIANA

NO. 2014-C-2362

RICHARD L. REYNOLDS

VERSUS

ROBERT J. BORDELON III, ROBERT J. BORDELON JR., USAGENCIES
CASUALTY INSURANCE COMPANY, AUTOMOBILE CLUB INTER-
INSURANCE EXCHANGE, AND/OR AUTO CLUB FAMILY INSURANCE
COMPANY D/B/A TRIPLE A INSURANCE, NISSAN NORTH AMERICA,
INFINITY DIVISION OF NISSAN NORTH AMERICA, INC., A LUXURY CAR
DIVISION OF NISSAN MOTORS, INSURANCE AUTO AUCTIONS CORP.,
ABC INSURANCE COMPANY, DEF INSURANCE COMPANY AND
XYZ INSURANCE COMPANY

CONSOLIDATED WITH

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
AS SUBROGEE OF/AND LINDA DUPUY

VERSUS

ROBERT BORDELON AND
USAGENCIES CASUALTY INSURANCE COMPANY

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF ST. TAMMANY

**CLARK, J.**

We granted certiorari to determine whether Louisiana recognizes the tort of

negligent spoliation. For the reasons that follow, we hold that no cause of action

exists for negligent spoliation of evidence. Regardless of any alleged source of the

duty, whether general or specific, public policy in our state precludes the existence

of a duty to preserve evidence. Thus, there is no tort. Alternative avenues of

recourse are available within Louisiana's evidentiary, discovery, and contractual

laws. Nonetheless, we remand for further consideration of the plaintiff's petition,

finding sufficient facts were alleged by the plaintiff to state a potential breach of

contract claim.

## FACTS AND PROCEDURAL HISTORY

On March 15, 2008, a multi-vehicle accident occurred in St. Tammany Parish. The plaintiff, Richard Reynolds, sustained injuries and filed suit against Robert Bordelon, III, the driver alleged to have caused the accident. The plaintiff also asserted claims under the Louisiana Products Liability Act against Nissan North America ("Nissan"), the alleged manufacturer and distributer of the plaintiff's 2003 Infiniti G35, for failure of the airbag to deploy.[1] Additionally, the plaintiff's petition alleged that his insurer, Automobile Club Inter-Insurance Exchange ("ACIIE") and the custodian of his vehicle after the accident, Insurance Auto Auctions Corporation ("IAA"), failed to preserve his vehicle for inspection purposes to determine whether any defects existed, despite being put on notice of the need for preservation.

ACIIE and IAA each filed exceptions of no cause of action, arguing a claim of spoliation of evidence requires "an intentional destruction of evidence for the purpose of depriving opposing parties of its use" and the petition contained no allegation of an intentional act by ACIIE or IAA. The trial court sustained the exception but allowed the plaintiff to amend his petition within fifteen days to state a cause of action pursuant to La.Code Civ.P. art. 934. The plaintiff filed a First Supplemental and Amending Petition for Damages, which reads, in pertinent part:

> 5.
> Plaintiff avers that shortly after the serious accident of March 15, 2008, giving rise to the instant matter the named defendants herein, INSURANCE AUTO AUCTIONS CORP, acting upon information and belief as the storage facility and/or as custodian of the Petitioner's vehicle on behalf of and/or in connection with AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE, d/b/a "Triple A Insurance", insurer of Plaintiff, RICHARD L. REYNOLDS, both respectively failed to maintain custody and/or preserve Plaintiff's vehicle despite both Defendants being on notice by Plaintiff that the vehicle was to be preserved as evidence for a lawsuit. Plaintiff avers that defendants had notice that a lawsuit was likely and was going to be pursued.

---

[1] We addressed the merits of the underlying LPLA claims against Nissan in a separate opinion. *See Reynolds v. Bordelon*, 14-2371, (La. ), _So.3d_.

2

6.

Plaintiff submits that the Defendants owed certain duties to Plaintiff and are liable unto Plaintiff for their negligence resulting in damages in the following non-exclusive manners:

A.) Defendants owed a duty unto the Plaintiff pursuant to La. C.C. art. 2315, as they were respectively on notice to prudently preserve, maintain, and to refrain from any alienation or destruction of Plaintiff's vehicle to be utilized in a tort claim with Defendants agreeing and understanding that the vehicle would be maintained for purposes of litigation.

B.) Additionally, Defendants are liable unto Plaintiff as their negligent actions cause[d] impairment of the instant civil claims, as Plaintiff's right to be free from interference in pursuing and/or proving his products liability claim is prejudiced giving rise to the loss of a right and opportunity of Plaintiff.

C.) In connection with the above plead [sic] facts the Defendants are further and/or alternatively liable unto the Plaintiff for negligently spoiling the evidence as Defendants owed Plaintiff a special and/or specific duty to preserve the evidence in the following nonexclusive particulars:

   (i) Pursuant to Louisiana law including La. C.C. art. 2315, and

   (ii) Pursuant to an affirmative agreement/undertaking and/or understanding that the evidence be preserved after being put on notice of necessity to preserve for litigation purposes; and

   (iii) Pursuant to a special relationship as between Plaintiff and Defendants, arising through and in connection with the insurer, AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE's, obligations and responsibility to their insured as set forth in section iv below; and

   (iv) Pursuant to both written and verbal contractual obligations to preserve the vehicle and pursuant to the insurer's obligations to its insured per the policy of insurance as well and/or alternatively through any written and/or otherwise documented

> obligation arising between INSURANCE AUTO AUCTIONS CORP, acting upon information and belief as the storage facility and/or as custodian of the Petitioner's vehicle on behalf of and AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE, insurer for Plaintiff.

7.

In connection with the above plead causes of action against AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE and INSURANCE AUTO AUCTIONS CORP, Plaintiff seeks special damages including but not limited to past, present and future medical expenses, and past, present and future lost wages, as well as general damages for his injuries sustained including but not limited to pain and suffering, mental anguish and trauma, and disability, and all other appropriate relief including but not limited to compensatory damages that otherwise Plaintiff would have been able to present and prove but for the negligent acts of Defendants as detailed above, as Defendants' negligence results in serious prejudice to Plaintiff due to no fault of his own.

In response, ACIIE and IAA again filed exceptions of no cause of action, and ACIIE filed a motion for summary judgment, in the alternative. The trial court denied the exceptions and the motion for summary judgment in light of an opinion recently released by the First Circuit Court of Appeal, which discussed, in dicta, the theory of "negligent spoliation."[2] The court of appeal denied writs, with one judge on the panel noting the court "ha[d] not issued a studied opinion regarding whether a cause of action exists for negligent spoliation of evidence."[3] This court denied the writ application.[4]

A later decision by the First Circuit Court of Appeal was released, wherein the concept of negligent spoliation was rejected, prompting ACIIE and IAA to renew their exceptions of no cause of action.[5] Both ACIIE and IAA ultimately

---

[2] See *Dennis v. Wiley*, 90-0236 (La. App. 1 Cir. 9/11/09), 22 So.3d 189.

[3] *Reynolds v. Bordelon*, 10-0227,(La.App. 1 Cir. 6/23/10), _So.3d_.

[4] *Reynolds v. Bordelon*, 10-1719 (La. 10/29/10), 48 So.3d 285.

[5] See *Clavier v. Our Lady of the Lake Hospital, Inc.*, 12-560 (La. App. 1 Cir. 12/28/12), 112 So.3d 881, *writ denied,* 13-0264 (La. 3/15/13), 109 So.3d 384.

filed motions for summary judgment in the alternative. Based on *Clavier*, the trial court sustained ACIIE and IAA's exceptions of no cause of action. Further, the trial court declined to give leave to the plaintiff to amend the petition, finding no amendment could state a cause of action given the fact that the plaintiff conceded there were no facts to support an allegation of intentional spoliation. Additionally, the trial court denied the motions for summary judgment as moot. The court of appeal rendered an opinion, affirming the trial court's judgments, finding no cause of action exists for negligent spoliation under Louisiana law.[6] We granted certiorari to definitively rule on the viability of negligent spoliation of evidence as a cause of action in Louisiana.[7]

### APPLICABLE LAW

As used in the context of the peremptory exception, a "cause of action" refers to the operative facts which give rise to the plaintiff's right to judicially assert the action against the defendant.[8] The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition.[9] No evidence may be introduced to support or controvert the exception of no cause of action.[10] The exception is triable on the face of the pleadings, and, for purposes of resolving the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true.[11] The issue at the trial of the exception is whether, on the face of

---

[6] *Reynolds v. Bordelon*, 13-1848 (La. App. 1 Cir. 9/19/14), 154 So.3d 570.

[7] *Reynolds v. Bordelon*, 12-2362 (La. 2/27/15), 159 So.3d 1061.

[8] *Ramey v. DeCaire,* 03-1299, p. 7 (La.3/19/04), 869 So.2d 114, 118; *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.,* 616 So.2d 1234, 1238 (La.1993).

[9] *Ramey,* at 7, 869 So.2d at 118; *Everything on Wheels Subaru, Inc.,* 616 So.2d at 1235.

[10] La. Code Civ. P. art. 931.

[11] *Fink v. Bryant,* 01-0987, p. 4 (La.11/28/01), 801 So.2d 346, 349; *City of New Orleans v. Board of Commissioners of Orleans Levee District,* 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253.

the petition, the plaintiff is legally entitled to the relief sought.[12] Louisiana retains a system of fact pleading, and mere conclusions of the plaintiff unsupported by facts will not set forth a cause or right of action.[13] The burden of demonstrating that a petition fails to state a cause of action is upon the mover.[14] Because the exception of no cause of action raises a question of law and the trial court's decision is based solely on the sufficiency of the petition, review of the trial court's ruling on an exception of no cause of action is *de novo*.[15] The pertinent inquiry is whether, in the light most favorable to the plaintiff, and with every doubt resolved in the plaintiff's favor, the petition states any valid cause of action for relief.[16]

## DISCUSSION

The plaintiff contends the allegations contained in his petition are not limited to the singular cause of action of negligent spoliation of evidence and that the sufficiency of the petition should not be measured solely by the existence (or lack thereof) of that specific tort. Rather, he avers the petition sufficiently describes negligent conduct by ACIIE and IAA that is recoverable under claims ranging from (1) impairment of a civil claim; (2) loss of a right or opportunity; (3) detrimental reliance; (4) general negligence under La.Civ.Code art. 2315; and (4) breach of contract. Thus, he argues that this court's position on the viability of a negligent spoliation cause of action in Louisiana is not dispositive of the issue. We disagree with respect to his tort claims. At its heart, the petition prays for relief for third parties' acts of negligently destroying evidence. Whether the law recognizes this type of relief is not a question of semantics. Rather, it is a legal inquiry that

---

[12] *Ramey,* at 7, 869 So.2d at 118.

[13] *Montalvo v. Sondes,* 93-2813, p. 6 (La.5/23/94), 637 So.2d 127, 131.

[14] *Ramey,* at 7, 869 So.2d at 119; *City of New Orleans,* at 28, 640 So.2d at 253.

[15] *Fink,* at 4, 801 So.2d at 349; *City of New Orleans,* at 28, 640 So.2d at 253.

[16] *Ramey,* at 8, 869 So.2d at 119.

can only be analyzed within the framework of answering the sole issue of whether Louisiana recognizes a claim for negligent spoliation.

In Louisiana, the foundation of any tort lies within the context of La.Civ.Code art. 2315, which provides, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Thus, while "fault" is a broader term than negligence or intent, there still exists a limit as to actual liability. Frank Maraist and Thomas Galligan, in their treatise on tort law, explained:[17]

> All theories of recovery, or categories of tort liability, are "fault" in Louisiana, although they represent different levels of blameworthiness or culpability. . . . [i]t may be helpful to imagine a fault line similar to a number line. . . . At the left side of this line is the actor who intentionally inflicts harm upon the victim. His or her conduct is the law's most blameworthy category of fault. Moving to the right, one arrives at negligence, i.e., the actor knew or should have known that his conduct presented an unreasonable risk of harm to someone, and he or she failed to act reasonably to avoid that risk. This, too, is fault, and "blameworthy" conduct, although less "blameworthy" than the intentional tortfeasor's act. Farther to the right is the actor who could not foresee that his or her conduct would expose another to harm, or whose conduct was reasonable under the circumstances. He or she is, in the eyes of the moral philosopher, blameless. Nevertheless, society may choose to impose the cost of the harm upon the blameless actor rather than upon the victim. If so, in Louisiana, he or she was at fault, although blameless. These places along the "fault" line where the nonblameworthy actor might be or might have been liable are vicarious liability, strict liability, and absolute liability. On the far right is the actor who could not foresee harm and/or who acted reasonably, and upon whom society does not place the risk of harm caused by his conduct. This person is not at "fault" nor blameworthy. There is simply no tort, although the layman may quite incorrectly call the resulting harm a mere "accident."

Jurisprudentially, this civilian concept has been more readily applied within the same context as negligence claims made in common law jurisdictions, wherein the analysis is subdivided into four elements: duty, breach, causation, and damages. The duty inquiry is central to our discussion on whether Louisiana recognizes the tort of negligent spoliation of evidence.

---

[17] Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law § 1.03 (2004).

While alternatively setting forth the general negligence theory of liability, the plaintiff asks this court to recognize the cause of action where a specific duty arose due to an agreement, contract, special relationship, or undertaking which was formed between the parties specifically for the purpose of preserving the evidence. Several appellate courts in Louisiana have followed this limited application of the tort; however, we decline to do so and expressly refuse to recognize the existence of the tort.[18] This holding applies whether under a general negligence approach or whether the source of the duty is readily apparent. Instead, we approach the duty element of the negligence analysis from a policy perspective.

Maraist and Galligan explain the duty element as it relates to policy:[19]

> The general duty and the specific risk inquiries both involve policy decisions on issues such as deterrence of undesirable conduct, avoiding the deterrence of desirable conduct, compensation of victims, satisfaction of the community's sense of justice, proper allocation of resources (including judicial resources), predictability, and deference to the legislative will.

The policy considerations can compel a court to simply make a categorical "no duty" rule regarding certain conduct. Examples of courts categorically excluding liability for a specific group of claims or plaintiffs are: claims for failure to act, injuries to unborn babies, negligent infliction of mental anguish, or purely economic harm unaccompanied by physical trauma to the plaintiff or his property.[20] This court, in *Hill v. Lundin*, expanded on its role in determining whether society is best served in recognizing a duty, and thus, a tort, stating:[21]

---

[18] See e.g., *Carter v. Exide Corp.*, 661 So.2d 698 (La. App. 2 Cir. 1995).

[19] Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law § 5.02 (2004).

[20] *Id.* This rule of exclusion is not without its exceptions. See *Pitre v. Opelousas General Hospital*, 530 So.2d 1151 (La. 1988) (wherein recoverable prenatal damage claims are discussed). Moreover, the no-duty rule for failure to act claims has its own exceptions when there is a special relationship between the non-actor and the victim, such as common carriers and their passengers, innkeepers and their guests, employers and their injured employees, jailers and their prisoners, teachers and their students; and parents and their children. With regard to negligent infliction of mental distress, Louisiana law does allow "bystander" claims. Last, the categorical bar against allowing tort damages for pure economic harm has its exceptions as well, wherein appellate courts have addressed the issue on a case-by-case basis and within the confines of a standard negligence analysis.

Despite the exceptions, the inclusion in our analysis of the categorical barring of these types of claims and/or class of plaintiffs is to demonstrate the ability and the authority courts have in refusing to recognize a duty to prevent certain conduct.

The same policy considerations which would motivate a legislative body to impose duties to protect from certain risks are applied by the court in making its determination. "All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect *some* persons under *some* circumstances against *some* risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. How appropriate is the rule to the facts of this controversy? This is a question that the court cannot escape." Malone, *Ruminations on Cause-In-Fact*, 9 Stanford L.Rev. 60, 73 (1956).

Having established that the duty requirement can be analyzed in terms of policy, we turn now to those policy considerations affected by our recognition (or rejection) of the tort of negligent spoliation of evidence. As formulated by Maraist and Galligan and listed above, the first of these factors is "deterrence of undesirable conduct." We find the act of negligently spoliating evidence is so unintentional an act that any recognition of the tort by the courts would not act to deter future conduct, but would, rather, act to penalize a party who was not aware of its potential wrongdoing in the first place. This is particularly true in the case of negligent spoliation by a third party, who is not vested in the ultimate outcome of the underlying case, and thus, has no motive to destroy or make unavailable evidence that could tend to prove or disprove that unrelated claim. This factor weighs in favor of a no-duty rule.

Next, compensation of the victim is an important policy consideration. This issue is strenuously debated nationally among those states that do recognize the tort because damages are so highly speculative.[22]    Determining the expected

---

[21]  *Hill v. Lundin and Associates*, 256 So. 2d 620, 623.

[22]  See *Smith v. Atkinson*, 771 So.2d 429 (Ala. 2000), wherein the Alabama Supreme Court held the proper measure of damages in a negligent spoliation of evidence case is the compensatory damages that would have been awarded on the underlying cause of action, and not the probability of success in the underlying action. Compare to *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846, 853 (D.C. 1998), wherein the District of Columbia held the measure of damages in a

recovery in the underlying case---a case that was not fully adjudged on evidence because that evidence was discarded---leaves room for substantial guess-work. Moreover, Louisiana, as a comparative negligence jurisdiction, would also have to factor in the likelihood of success of that underlying case since that would be the measure of the proportional fault of the spoliator. Accordingly, the parties and the trier of fact would be called upon to estimate the impact of the missing evidence and guess at its ability to prove or disprove the underlying claim, resulting in liability based far too much on speculation. We find these hypothetical and abstract inquires weigh against recognition of the tort of negligent spoliation.

Another policy consideration is "satisfaction of the community's sense of justice." Society's sense of fairness is vital in determining whether a reasonable person should have acted or not acted in a certain manner. Because the reasonable person standard is inherent in the negligence analysis, it is prudent to ask whether reasonable persons would expect certain behavior in certain situations and, conversely, whether reasonable persons can be expected to be exposed to liability in certain situations. This question factors in squarely with another policy consideration: predictability. Thus, we will address these elements together.

Recognition of the tort of negligent spoliation would place a burden on society as a whole, causing third parties who are not even aware of litigation to adopt retention policies for potential evidence in cases, in order to reduce their exposure to liability. There is simply no predictability in requiring preservation and record keeping for unknown litigation. Moreover, broadening the delictual liability for negligent spoliation would place restrictions on the property rights of persons, both natural and juridical, insofar as the tort would act to limit the right to dispose of one's own property. These policy concerns are readily apparent in the

negligent spoliation of evidence case should be compensatory damages in the underlying case adjusted by the estimated likelihood of success in the potential civil action.

10

facts before this court where ACIIE paid to the plaintiff what was owed under his policy and received the title to the totaled vehicle. Then, IAA, in the normal course of its business, received the vehicle and disposed of it by auctioning it to a salvage yard for spare parts. To impose a requirement that all potential evidence be preserved for possible future litigation would wreak havoc on an industry whose very existence is sustained by destruction of possible subjects of litigation: totaled vehicles. It is easy to imagine the trickle-down effect that a preservation policy would have on insureds themselves; the longer an insurer or auction company is required to store a vehicle, the higher the costs, and the more likely insurance premiums would be increased to absorb those costs. Moreover, the delay in proceeds being remitted to the insurer at the time of the auction prevents those funds from being immediately available to offset the total loss payout the insurer pays to the insured. Again, this practice could result in higher costs for the public. Thus, these two factors, societal justice and predictability, weigh heavily against broadening the delictual obligation for negligent spoliation.

Next, we look to the proper allocation of resources, including judicial resources. Allowing a derivative tort invites litigation and encourages parties to bring a new suit where the underlying suit was not successful. Again, this derivative litigation could open the floodgates for endless lawsuits where the loss is speculative at best. Additionally, it could create confusion for fact-finders, particularly juries, inasmuch as it allows a trial within a trial. For instance, triers of fact could be presented with the facts of the underlying case and also presented with the facts surrounding the alleged destruction of evidence, causing inconsistency and the potential for misunderstanding. Thus, this factor does not favor recognition of the tort.

Last, we are called upon to consider any deference owed to the legislature. This court, in limiting the application of the tort of interference with contractual relations, has previously held:[23]

> The framers conceived of fault as a breach of a preexisting obligation for which the law orders reparation, when it causes damage to another, and they left it to the courts to determine in each case the existence of an anterior obligation which would make an act constitute fault. 2 M. Planiol, Treatise on the Civil Law, Part 1, §§ 863–865 (1959); *Pitre v. Opelousas General Hosp.,* 530 So.2d 1151 (La.1988).
>
> . . .
>
> Portalis, the leading drafter of the Code Napoleon, clearly foresaw that the code must constantly be applied to unexpected issues and circumstances:
>
>> A code, however complete it may seem, is hardly finished before a thousand unexpected issues come to face the judge. For laws, once drafted, remain as they were written. Men, on the contrary, are never at rest; they are constantly active, and their unceasing activities, the effects of which are modified in many ways by circumstances, produce at each instant some new combination, some new fact, some new result.
>>
>> A host of things is thus necessarily left to the province of custom, the discussion of learned men, and the decision of judges.
>>
>> The role of legislation is to set, by taking a broad approach, the general propositions of the law, to establish principles which will be fertile in application, and not to get down to the details of questions which may arise in particular instances.
>>
>> It is for the judge and the jurist, imbued with the general spirit of the laws, to direct their application. A. Levasseur, Code Napoleon or Code Portalis? 43 Tul.L.Rev. 762, 769 (1969) (Translation by Shael Herman)

Thus, with regard to this final policy consideration before us, we find the legislation on fault and tort law in Louisiana has left to the courts the task of

---

[23] *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228, 231 (La. 1989)

determining the viability of certain causes of action. As such, we conclude that legislative will does not require recognition of the tort of negligent spoliation.

Having considered all the policy factors under the duty element of the negligence analysis in Louisiana, we reflect on one more concern: availability of other avenues of recourse. California, a state that once pioneered negligent spoliation, but subsequently reversed itself and now does not recognize the existence of the tort, stated:[24]

> We do not believe that the distinction between the sanctions available to victims of first party and third party spoliation should lead us to employ the burdensome and inaccurate instrument of derivative tort litigation in the case of third party spoliation. We observe that to the extent a duty to preserve evidence is imposed by statute or regulation upon the third party, the Legislature or the regulatory body that has imposed this duty generally will possess the authority to devise an effective sanction for violations of that duty. To the extent third parties may have a contractual obligation to preserve evidence, contract remedies, including agreed-upon liquidated damages, may be available for breach of the contractual duty. Criminal sanctions, of course, also remain available.

> . . .

> In sum, we conclude that the benefits of recognizing a tort cause of action, in order to deter third party spoliation of evidence and compensate victims of such misconduct are outweighed by the burden to litigants, witnesses, and the judicial system that would be imposed by potentially endless litigation over a speculative loss, and by the cost to society of promoting onerous record and evidence retention policies.

We adopt this logic and write separately on the issue to discuss the alternative remedies plaintiffs can seek in Louisiana. Discovery sanctions and criminal sanctions are available for first-party spoliators. Additionally, Louisiana recognizes the adverse presumption against litigants who had access to evidence and did not make it available or destroyed it. Regarding negligent spoliation by third parties, the plaintiff who anticipates litigation can enter into a contract to preserve the evidence and, in the event of a breach, avail himself of those contractual remedies. Court orders for preservation are also obtainable. In this

---

[24] *Temple Community Hosp. v. Superior Court*, 20 Cal, 4th 464, 976 P.2d 223, 84 Cal. Rptr. 2d 852 (1999).

particular case, the plaintiff also could have retained control of his vehicle and not released it to the insurer, thereby guaranteeing its availability for inspection. Furthermore, he could have bought the vehicle back from the insurer for a nominal fee. Thus, we find the existence of alternate avenues for recovery further support our holding.

## CONCLUSION

Our review of the policy considerations lead us to conclude that Louisiana law does not recognize a duty to preserve evidence in the context of negligent spoliation. In the absence of a duty owed, we find there is no fault under La.Civ.Code art. 2315 or under any other delictual theory in Louisiana. Furthermore, the presence of alternate remedies supports our holding that there is no tort of negligent spoliation of evidence. Accordingly, we agree with the lower courts that there is no cause of action for this tort.

However, we are tasked with evaluating the petition to determine whether it states *any* valid cause of action for relief. We find the petition alleges sufficient facts to support a breach of contract cause of action. Thus, we reverse the judgment that granted the exception of no cause of action and remand to the trial court for consideration of the contract claim. We offer no opinion as to the ultimate success of this cause of action or to any defense thereto.

**REVERSED AND REMANDED.**

14

06/30/15

# SUPREME COURT OF LOUISIANA

## NO. 2014-C-2362

### RICHARD L. REYNOLDS

### VERSUS

### ROBERT J. BORDELON III, ROBERT J. BORDELON JR., USAGENCIES CASUALTY INSURANCE COMPANY, AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE, AND/OR AUTO CLUB FAMILY INSURANCE COMPANY D/B/A TRIPLE A INSURANCE, NISSAN NORTH AMERICA, INFINITY DIVISION OF NISSAN NORTH AMERICA, INC., A LUXURY CAR DIVISION OF NISSAN MOTORS, INSURANCE AUTO AUCTIONS CORP., ABC INSURANCE COMPANY, DEF INSURANCE COMPANY AND XYZ INSURANCE COMPANY

### CONSOLIDATED WITH

### STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AS SUBROGEE OF/AND LINDA DUPUY

### VERSUS

### ROBERT BORDELON AND USAGENCIES CASUALTY INSURANCE COM

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF ST. TAMMANY*

**WEIMER, J.**, additionally concurring.

I subscribe to the majority's opinion. I write separately to emphasize the legislative source of public policy which forms the basis of this court's analysis of negligent spoliation.

In a civil law system, the role of the judiciary is to evaluate statutory authority in determining either to impose or not impose a duty.[1]  The plaintiff has not pointed to any statutory authority, nor has statutory authority been found, to establish a general duty for a third party to retain property which may be the subject of litigation.

Although La. C.C. art. 2315, the fountainhead of tort liability, contains broad terms, none of those terms directly addresses negligent spoliation.  However, the legislature further authorizes courts, when the legislature has not spoken directly on a matter, to turn to custom for a solution.[2]  Failing to find a solution from custom, courts are then authorized by the legislature to "proceed according to equity.  To decide equitably, resort is made to justice, reason, and prevailing usage."[3]

In the present case, this court's analysis has applied these codal principles within the concept of making a policy determination.  It is only where the legislature has not spoken and there is no custom, or the legislature has deferred to the judiciary that we are authorized to resort to equity for discerning policy.  Thus, I respectfully concur.

---

[1] See La. C.C. art. 1 ("The sources of law are legislation and custom"); La. C.C. art. 3 ("Custom may not abrogate legislation.").

[2] See La. C.C. art. 3.

[3] La. C.C. art. 4.

06/30/15

SUPREME COURT OF LOUISIANA

NO. 2014-C-2362

RICHARD L. REYNOLDS

VERSUS

ROBERT J. BORDELON III, ROBERT J. BORDELON JR., USAGENCIES CASUALTY INSURANCE COMPANY, AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE, AND/OR AUTO CLUB FAMILY INSURANCE COMPANY D/B/A TRIPLE A INSURANCE, NISSAN NORTH AMERICA, INFINITY DIVISION OF NISSAN NORTH AMERICA, INC., A LUXURY CAR DIVISION OF NISSAN MOTORS, INSURANCE AUTO AUCTIONS CORP., ABC INSURANCE COMPANY, DEF INSURANCE COMPANY AND XYZ INSURANCE COMPANY

CONSOLIDATED WITH

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AS SUBROGEE OF/AND LINDA DUPUY

VERSUS

ROBERT BORDELON AND USAGENCIES CASUALTY INSURANCE COMPANY

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF ST. TAMMANY

CRICHTON, J., additionally concurs and assigns reasons:

I agree completely with the majority decision and join in both its reasoning and result. I write separately to emphasize that this Court's recognition of a negligent spoliation tort would create significant, and unnecessary, burdens on the legal system. Permitting parties to bring negligent spoliation claims would "inundate our justice system" with derivative tort litigation, *see Temple Community Hospital v. Superior Court*, 976 P.2d 223, 228 (Cal. 1999), and, as my colleague Justice Clark points out in the majority opinion, "wreak havoc" on the individuals and entities impacted and the judicial system as a whole.