# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-1051

**EUGENE J. SONNIER, II**

**VERSUS**

**THE CATHOLIC FOUNDATION OF THE DIOCESE OF LAFAYETTE, ET AL.**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20146291
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

**********

**MARC T. AMY
JUDGE**

**********

Court composed of Marc T. Amy, Phyllis M. Keaty, and John E. Conery, Judges.

**AFFIRMED.**

**Harold D. Register, Jr.**
**216 Rue Louis XIV**
**Lafayette, LA   70508**
**(337) 981-6644**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     Eugene J. Sonnier, II

**D. Reardon Stanford**
**Hoyt & Stanford**
**315 S. College, Suite 165**
**Lafayette, LA   70503**
**(337) 234-1012**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     Norlet Pierre

**Troy Allen Broussard**
**Allen & Gooch**
**Post Office Box 81129**
**Lafayette, LA   70598-1129**
**(337) 291-1000**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
   **Society of the Roman Catholic Church of the Diocese of Lafayette**
   **The Catholic Foundation of the Diocese of Lafayette**
   **The Congregation of St. Genevieve Roman Catholic Church**

**AMY, Judge.**

The plaintiff filed suit alleging that the defendants interfered with his right to direct the disposition of his son's remains as designated by his son and as reflected by a military form. He alleged that, by virtue of the designation, the cemetery plot in which his son was buried, as well as the two adjacent plots should be titled solely in his name. Following amendment of the petition, the trial court sustained the defendants' exceptions of no cause of action and dismissed the plaintiff's claim. The plaintiff appeals. For the following reasons, we affirm.

### Factual and Procedural Background

The record indicates that Eugene Sonnier, III, the son of Eugene J. Sonnier, II and Norlet Pierre, died in October 2013 while serving in the United States Air Force. He was ultimately buried in Plot 21 of the Calvary Cemetery in Lafayette.

Mr. Sonnier filed this matter and by amending petition alleged that, by designation of his son, he was "the Person Authorized to Direct (PADD) the Disposition" of his son following his death. Mr. Sonnier asserted that this designation provided him with the exclusive right to "control the interment" of his son's remains "through the D[epartment of] D[efense] Form 93." (hereinafter Form 93.)

Mr. Sonnier initially named The Catholic Foundation of the Diocese of Lafayette, Louisiana (the "Diocese") and Mrs. Pierre as defendants, alleging that he was the sole owner of the subject burial plot and that he "acquired ownership of the property" "by way of an insurance assignment, payments made individually, and/or pursuant to rights bestowed upon him by his son via a properly executed" Form 93. Yet, he contended that Mrs. Pierre was "in possession of the property" and was "erroneously claiming an ownership interest in" the plot. Mr. Sonnier

asserted that the discord surrounding the plot resulted in the decedent's tomb not being completed. Mr. Sonnier alleged that the "Diocese of Lafayette, through Calvary Cemetery" "will complete the construction of said tomb" to his "irreparable detriment" if not restrained. Therefore, Mr. Sonnier sought the issuance of a temporary restraining order preventing the completion of the construction of the decedent's tomb. He further prayed that he be recognized as the "legal owner" of the subject plot and that the trial court order "that Defendant's alleged acquisition of ownership of said property be erased from any public record in this parish applicable to cemetery plots."

In response, the Diocese[1] filed an exception of no cause of action, noting that the plaintiff did not allege that it owned or managed the cemetery. The Diocese further suggested that Mr. Sonnier's suit was "procedurally flawed" as it did not name the cemetery's owner, St. Genevieve Roman Catholic Church of the Diocese of Lafayette, as a defendant. Addressing an aspect of the factual background that was not included in the original petition, the Diocese noted that Plot 21 was initially titled only in Mr. Sonnier's name. However, upon learning of Mr. Sonnier's and Mrs. Pierre's dispute as to the title, the Vice President of St. Genevieve, Monsignor Curtis Mallet, reviewed the dispute and "determined that the initial titling of the plot in Sonnier's name only was in error, and he directed the cemetery staff to issue a corrected title in Sonnier and Pierre's names, jointly." The title was thereafter reissued. Further, the Diocese asserted that no cause of action existed as the cemetery was following its own rules and regulations in requiring completion of the tomb after Mr. Sonnier and Mrs. Pierre did not do so in

---

[1] In its Answer, the Church defendant(s) appeared as "The Catholic Foundation of the Diocese of Lafayette, Louisiana & Society of the Roman Catholic Church of the Diocese of Lafayette."

excess of one year after their son's interment. This factor, the Diocese asserted, undermined the request for a restraining order as well.

By "Amended Petition for Recognition of Ownership and Injunctive Relief," Mr. Sonnier named St. Genevieve Roman Catholic Church of the Diocese of Lafayette as a defendant. He alleged that "St. Genevieve purportedly owns Calvary Cemetery and as the owner of the cemetery St. Genevieve intends to complete construction of said tomb unless the dispute as stated in the original Petition is resolved between Plaintiff and Mrs. Pierre." Mr. Sonnier asserted that "construction could begin any day now," and that such construction of the tomb would cause him irreparable injury "as the tomb carries his son, and he has a strong interest and right in completing said tomb in a reasonable manner to his choosing." Further, he alleged that Form 93 provided him with the exclusive right to control the interment of his son and that La.R.S. 8:655, addressed below, as well as "military and federal law[,] override[] the policies as elicited by St. Genevieve which allegedly give it the right to complete construction of said tomb." He asserted that he "is the sole and exclusive owner" of Plot 21 "granted to him thought [sic] the DD Form 93."

Mr. Sonnier additionally alleged that adjacent Plots 20 and 22 "were improperly given to Mrs. Pierre because they were procured in a deceptive fashion." On this latter point, Mr. Sonnier stated that: "Mrs. Pierre was aware that Mr. Sonnier informed Mr. Dunand[2] that Mr. Sonnier would purchase the aforementioned plots, however, totally disregarding Plaintiff's right to exclusively control the interment of Mr. Sonnier, III, Mrs. Pierre purchased the aforementioned

---

[2] Subsequently identified by Mr. Sonnier as "Paul Dunand of Calvary Cemetary."

3

burial plots and was granted ownership" of them. Mr. Sonnier asked that the trial court rule that he "is the correct and sole owner" of the two plots or, alternatively, that he "is the sole owner" of either plot. Barring these alternatives, Mr. Sonnier asked that the trial court permit him to remove his son's remains to another cemetery as he "has the exclusive right to control" his son's interment.

Following the amendment to the petition, the Diocese submitted evidence pertaining to the plot ownership as an exhibit to its memorandum in support of its exception of no cause of action[3] and in opposition to the petition for recognition of ownership and injunctive relief. Additionally, Mrs. Pierre filed exceptions of no cause of action and vagueness or ambiguity of the petition.

Upon consideration of these initial filings, the trial court sustained the Diocese's exception of no cause of action and further sustained Mrs. Pierre's exception of vagueness and ambiguity of the petition. The trial court's ruling permitted Mr. Sonnier fifteen days to amend the petition.

Thereafter, Mr. Sonnier filed a Second Amended Petition for Recognition of Ownership and Injunctive Relief once again asserting that he held exclusive rights as the PADD (under Form 93). He further included allegations regarding his and Mrs. Pierre's actions in preparing for the burial of their son. He asserted that "[o]ut of the kindness of his heart," he invited Mrs. Pierre to join him at Calvary Cemetery, "not for her to make any decisions whatsoever, but for her to be there while [he] utilized his exclusive rights as the PADD to arrange" their son's funeral

---

[3] While the Diocese introduced evidence under the cover of its memorandum which jointly addressed the exception of no cause of action as well as the merits of the petition(s), we point out that this evidence could not be considered for purposes of the exception. *See* La.Code Civ.P. art. 931 (providing, in part, that "[n]o evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action"). As this appeal addresses only the exception of no cause of action, reference to that evidence is solely for purposes of relating the factual and procedural background. Reference to evidence submitted by Mr. Sonnier in support of his petition is similarly limited.

service. He stated that he made all selections involving plot location and vault and informed the respective personnel to forward the bills to him. He also alleged that he paid for various other funeral service expenses. He stated that, although Mrs. Pierre was aware that he intended to "and was going to pay for the plots adjacent to" their son, Mrs. Pierre "maliciously proceeded to divest [him] of his exclusive rights to direct the disposition of [their son] when she directed" her husband to go to the cemetery and purchase Plots 20 and 22 before he could purchase them.

Mr. Sonnier further complained that Monsignor Mallet failed to correct "the error" of cemetery officials in selling the adjacent plots to Mrs. Pierre's husband and thereby "completely usurp[ed] the vested rights given to [him] as the PADD." The conflict surrounding the title issues as to the three plots, Mr. Sonnier asserted, resulted in the inability to complete the gravesite "because the concept that [he] rightfully chose as the PADD, requires the two adjacent burial plots that were improperly sold and taken away from [him]" and, therefore, "completely divesting" him "of his clear and absolute right to direct the disposition" of his son's remains. Mr. Sonnier asserted that he paid for all expenses associated with his son's funeral, "including the burial plot where [he] is buried" and further reimbursed Mrs. Pierre for any of her expenses. While he suggested that he bore "[a]ll financial responsibility" associated with the disposition of his son's remains, he further alleged that "10 U.S.C. § 1482 entitled 'Expenses Incident to Death' not only gives [him] authorization as the PADD, but also gives [him] monetary support to carry out his duties as the PADD."

At the conclusion of the second amended petition, Mr. Sonnier requested that the trial court name him as the sole owner of Plot 21 and "[i]n the alternative" he requested that the trial court name him the sole owner of Plots 20 and 22.

5

Finally, Mr. Sonnier prayed that if the trial court did not grant the above demands, he asked that the trial court "relocate" his son's body to another location within the cemetery.

Following the amendment, the Diocese and St. Genevieve again filed an exception of no cause of action as did Mrs. Pierre. As before, the Diocese noted that Mr. Sonnier raised no facts indicating that it owned the subject cemetery or otherwise controlled or managed the cemetery. As for St. Genevieve's involvement, it argued that the facts alleged revealed no avenue prohibiting the enforcement of its own rules and regulations regarding construction of the tomb per La.R.S. 8:204. Mrs. Pierre similarly asserted that no cause of action existed and disputed Mr. Sonnier's suggestion that the relief sought was available to him through the authority purportedly granted to him by Form 93.

Following a hearing, the trial court sustained the exceptions of no cause of action. The judgment that followed dismissed the plaintiff's claims against all defendants.

Mr. Sonnier appeals, setting forth the following assignment of error:

The trial court erred when it determined that there was no cause of action when the Office of Vicar General for the Diocese of Lafayette retitled Calvary Cemetery, St. Catherine section, plot 21 from its original owner, Eugene J. Sonnier, II and when Mr. Paul Dunand, of Calvary Cemetery, sold a burial plot to Titus and Norlet Pierre although both Mr. Dunand and Norlet Pierre were aware that Eugene Sonnier, II had reserved the plots.

As reflected by this assignment of error, Mr. Sonnier no longer addresses the prior request for injunctive relief or any facts surrounding the completion of the tomb. As that argument has seemingly been abandoned or otherwise rendered moot, we do not address that initial concern herein.

6

**Discussion**

*Exception of No Cause of Action*

Louisiana Code of Civil Procedure Article 927(A)(5) provides for the peremptory exception of no cause of action. The exception's function is to test the legal sufficiency of the plaintiff's petition by determining whether the law affords a remedy on the facts alleged. *Everything on Wheels Subaru, Inc. v. Subaru S., Inc.*, 616 So.2d 1234, 1235 (La.1993). Pursuant to La.Code Civ.P. art. 931, no evidence may be introduced to support or to controvert the exception of no cause of action. In trying the exception on the face of the pleadings, the trial court must accept the well-pleaded allegations of fact in the petition as true and determine whether the plaintiff is legally entitled to the relief sought. *Everything on Wheels*, 616 So.2d 1234. However, because Louisiana employs a system of fact pleading, mere conclusions by the plaintiff, unsupported by facts, will not set forth a cause of action. *Ramey v. DeCaire*, 03-1299 (La. 3/19/04), 869 So.2d 114. As the exception raises a question of law and the trial court bases its decision solely on the sufficiency of the petition, an appellate court reviews a ruling on an exception of no cause of action *de novo*. *Reynolds v. Bordelon*, 14-2362 (La. 6/30/15), 172 So.3d 589.

*Person Authorized to Direct Disposition*

Central to Mr. Sonnier's claim against the Diocese and Mrs. Pierre is his assertion that his designation as the PADD in Form 93 authorizes him to exercise complete control of *all* matters which he argues are related to the disposition of his son's remains. In this regard, 10 U.S.C. § 1482, which relates to the expenses incident to death of military personnel, provides, in part, that:

(c) The following persons may be designated to direct disposition of the remains of a decedent covered by this chapter:

(1) The person identified by the decedent on the record of emergency data maintained by the Secretary concerned (DD Form 93 or any successor to that form), as the Person Authorized to Direct Disposition (PADD), regardless of the relationship of the designee to the decedent.

(2) The surviving spouse of the decedent.

(3) Blood relatives of the decedent.

(4) Adoptive relatives of the decedent.

(5) If no person covered by paragraphs (1) through (4) can be found, a person standing in loco parentis to the decedent.

Through this conduit, Mr. Sonnier seeks to have the titles of Plots 21 and/or 20 and 22 placed in his name alone. This decision, he contends, is required in order for him to fulfill the directive described by Form 93. After review, we find no error in the trial court's determination that the petitions filed in this case do not contain sufficient facts so as to reveal that he is entitled to such relief.

First, and as to the Diocese, the petition does not indicate through what channel, if any, the Diocese has control over Calvary Cemetery. Instead, in his amended petition, Mr. Sonnier alleged that St. Genevieve "purportedly owns the cemetery." He further alleges that his interactions with personnel regarding the selection of and payment for the plots, including payment by Mrs. Pierre's husband, occurred through "Paul Dunand of Calvary Cemetery." While he alleges that Monsignor Mallet "changed the deed" of Plot 21 to list himself and Mrs. Pierre as co-owners of Plot 21 "although it is their clear and written policy to not have co-owned plots," he does not identify in what capacity Monsignor Mallet[4]

---

[4] As noted in the factual and procedural background, the Diocese answered that Monsignor Mallet served as the Vice President of St. Genevieve. We make this observation for

8

made such a decision or, in this instance, which "policy" prohibits such ownership. In short, the petitions do not reveal any type of hierarchical structure that joins the Diocese with St. Genevieve, who allegedly owned the subject cemetery.

As for St. Genevieve, the petitions lack indication that the ownership of the plot(s) is dictated by 10 U.S.C. § 1482 which only references the "disposition of the remains of the deceased[.]" *See also* La.R.S. 8:655.[5] Neither the statute nor

_____

purposes of discussion only as it demonstrates the deficiency of the plaintiff's petition, as the exception of no cause of action is adjudged solely by the face of the petition(s).

[5] Louisiana Revised Statutes 8:655, which includes reference to the PADD indicated on a Form 93, provides that:

A. The right to control interment, as defined in R.S. 8:1(26), of the remains of a deceased person, unless other specific directions have been given or the designation of a specific person to control disposition has been made by the decedent in the form of a written and notarized declaration, vests in and devolves upon the following in the order named:

(1) The surviving spouse, if no petition for divorce has been filed by either spouse prior to the death of the decedent spouse.

(2) A majority of the surviving adult children of the decedent, not including grandchildren or other more remote descendants.

(3) The surviving parents of the decedent.

(4) A majority of the surviving adult brothers and sisters of the decedent.

(5) A majority of the adult persons respectively in the next degrees of kindred as established in Civil Code Article 880 et seq.

B. (1) If the decedent died in a manner described by 10 U.S.C. § 1481(a)(1) through (8) while serving in any branch of the United States Armed Forces, the United States Reserve Forces, or National Guard, and the decedent executed a United States Department of Defense Record of Emergency Data, known as DD Form 93, or its successor form, the right to control interment for the decedent shall devolve upon the Person Authorized to Direct Disposition, also referred to as the PADD, as indicated on the DD Form 93 or its successor form.

(2) There shall be no liability for a cemetery authority, funeral establishment, funeral director, crematory authority, or the employees or agents of any of them to whom a copy of a DD Form 93 is presented, purportedly executed by the decedent for conduction of the interment or other disposition of the decedent's remains, pursuant to the instructions of the PADD as indicated on the DD Form 93, or for relying on the representation of the PADD that the decedent died in a manner described in Paragraph (1) of this Subsection.

jurisprudence indicate that the parameters of the PADD directive dictate the ownership of the plot in which the deceased is interred. Moreover, the second amending petition reveals that Mr. Sonnier did not pay for adjacent Plots 20 and 22. Rather, he alleged that Mr. Pierre paid for those plots. Despite this allegation, Mr. Sonnier alternatively seeks placement of the title of those plots in his name. Whether by reference to 10 U.S.C. § 1482, or by reference to specific facts, the petitions do not set forth a cause of action entitling Mr. Sonnier to the relief sought.

Neither do we find merit in the assertion that Mr. Sonnier is entitled to have St. Genevieve re-title the plots solely in his name due to a violation of its rules and regulations.

Significantly, La.R.S. 8:204 provides that:

A cemetery authority may make, adopt, amend, add to, revise, repeal or modify, and enforce rules and regulations for the use, care, control, management, restriction and protection of all or any part of its cemetery, including without limitation the following:

(1) It may restrict and limit the use of all property within its cemetery;

(2) It may regulate the uniformity, class and kind of all markers, monuments and other structures within the cemetery and its subdivisions;

(3) It may regulate or prohibit the erection and/or installation of monuments, markers, effigies, structures and foundations within the cemetery;

(4) It may regulate or prevent the introduction or care of plants or shrubs within the cemetery;

---

C. (1) In the event that the decedent has made multiple notarized declarations of interment pursuant to Subsection A of this Section, the declaration dated last shall control.

(2) In the event that the decedent has made one or more notarized declarations of interment pursuant to Subsection A of this Section, and the decedent executed a DD Form 93 and died in a manner described in Subsection B of this Section, the declaration or the DD Form 93, whichever is dated last, shall control interment of the decedent's remains.

(5) It may prevent interment in any part of the cemetery of human remains not entitled to interment and prevent the use of interment spaces for purposes violative of its restrictions or rules and regulations;

(6) It may regulate the conduct of persons and prevent improper assemblages in the cemetery, and

(7) It may make and enforce rules and regulations for all other purposes deemed necessary by the cemetery authority for the proper conduct of the business of the cemetery, for the transfer of any interment space or the right of interment, and the protection and safeguarding of the premises, and the principles, plans, and ideals on which the cemetery is conducted.

Although the plaintiff suggests that various cemetery rules were violated, the allegation is conclusory in nature. The petitions do not set forth sufficient facts so as to determine that particular conduct by St. Genevieve violated a particular rule(s) applicable to the cemetery. The petitions generally detail the factual background, above, and describe St. Genevieve's ultimate actions as violative of their rules and regulations. However, mere conclusions of the plaintiff unsupported by facts will not set forth a cause or right of action.[6] *Montalvo v. Sondes*, 93-2813 (La. 5/23/94), 637 So.2d 127.

By way of example, we note that, in Paragraph 58 of the second amended petition, Mr. Sonnier alleges that "[t]he Diocese of Lafayette has indicated in their policies that joint ownership of burial plots is not allowed." Yet, as stated above, there is no allegation that the Diocese owned, controlled, or directed Calvary Cemetery. Neither do the petitions advance that the "policy" referenced in this regard is applicable to this occurrence. Simply, the petitions allege various facts and allegations without sufficient connectivity so as to set forth a cause of action.

---

[6] On this latter point, we note that the plaintiff failed to set forth sufficient facts to demonstrate the existence of a contractual obligation by St. Genevieve.

11

Accordingly, we leave undisturbed the sustaining of the exception of no cause of action as to both the Diocese and to St. Genevieve.

*Mrs. Norlet Pierre*

Finally, we address the petition(s) in the context of the claim against Mrs. Pierre. While the plaintiff broadly states that Mrs. Pierre interfered with his ultimate "concept" to have three adjacent plots for his son's burial, the petitions do not set forth facts constituting a cause of action against her in this regard. Instead, she is alleged to have caused the title of Plot 21 to be re-issued jointly in her name and that she purchased the two adjacent plots. While Mr. Sonnier was dissatisfied with her conduct, he has not alleged facts constituting a cause of action against her, i.e., no facts constituting a tortious or contractual claim.

Accordingly, we leave undisturbed the trial court's determination.

*Disinterment*

Finally, we point out that, by the second amending petition, Mr. Sonnier alternatively sought permission to have his son's body moved to another location within Calvary Cemetary "based on all information presented herein which illustrate that Eugene Sonnier, II's rights have been vastly undermined." To the extent the trial court's ruling encompassed this alternative demand, we again leave that claim undisturbed. Instead, 10 U.S.C. § 1482(c) permits the PADD to "direct disposition of the remains of a decedent[.]" The statute is silent on the right to later disinter those remains.

However, La.R.S. 8:659, entitled "Permission to move remains," provides that:

> A. The remains of a deceased person may be moved from a cemetery space to another cemetery space in the same cemetery or to another cemetery with the consent of the cemetery authority and the

12

written consent of one of the following, in the order named, unless other directions in writing have been given by the decedent:

> (1) The surviving spouse, if no petition for divorce has been filed by either spouse prior to the death of the decedent spouse.

> (2) The surviving adult children of the decedent, not including grandchildren or other more remote descendants.

> (3) The surviving parents of the decedent.

> (4) The surviving adult brothers and sisters of the decedent.

> B. If the required consent cannot be obtained, a final judgment of the district court of the parish where the cemetery is situated shall be required.

This provision makes no reference to Form 93. Additionally, in *Spiess v. Greenwood Development Co., Inc.*, 542 So.2d 810, 813 (La.App. 3 Cir. 1989), a panel of this court made the distinction between a party having the legal authority "to control the disposition of the remains of a deceased person" pursuant to La.R.S. 8:655 and the person(s) having authority to direct the relocation of a deceased's remains per La.R.S. 8:659. Referencing those statutes, the panel explained that the plaintiff in that case "clearly had the sole statutory authority to initially determine the decedent's final resting place. However, after the decedent's initial burial, the voluntary consent of the defendant cemetery authority was also statutorily required before the decedent's remains could be disinterred and transferred." *Id.* Notably, while La.R.S. 8:655 includes a reference to the PADD on Form 93, La.R.S. 8:659 includes no such reference.

As above, we find that the petitions do not set forth facts allowing this alternative relief.

13

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are assessed to the plaintiff—appellant, Eugene J. Sonnier, II.

**AFFIRMED.**