SANDRA CABRINA JENKINS, Judge.
h Sharon Tomlinson (“Mrs. Tomlinson”) appeals the trial court judgment granting summary judgment in favor of Daisy Dukes Restaurant, LLC (“Daisy Dukes”) and its insurer Landmark American Insurance Company (“Landmark”).
First, we find that' there is no factual support that Daisy Dukes intentionally destroyed evidence for the purpose of depriving Mrs. Tomlinson of its use at trial. Second, we find that there are genuine issues of material fact as to Daisy Dukes’ liability. Therefore, we affirm the motion for summary judgment as to the spoliation claim and reverse the motion1 for summary judgment "as to the issue of liability.
Before we proceed with our explanation of our holding, we address a procedural matter concerning the lack of decre-tal language in 'the judgment granting Daisy Dukes’ and Landmark’s motions for summary judgment. The judgment which Mrs. Tomlinson wishes to appeal merely provides, “Defendants’ Motion for Summary Judgment Regarding Plaintiff’s Claims for Spoliation of Evidence and Impairment of a Civil Action is granted”; and “Defendants’ Motion |2for Summary Judgment as to liability is granted.” This judgment failed to decree the dismissal of Mrs. Tomlinson’s lawsuit with prejudice. The absence of this necessary decretal language means that the judgment is not final and appealable, and thus for us to reach the merits of this appeal we must exercise our supervisory, rather than appellate, jurisdiction. See La. Const, art. V, 10(A).
We cannot determine the merits of an appeal unless our jurisdiction is properly invoked by a final judgment. Bd. Of Supervisors of La. State Univ. & Mech. College v. Mid-City Holdings, L.L.C., 14-0506, p. 2 (La.App. 4 Cir. 10/15/14); 151 So.3d 908, 910. “A judgment is the deter mination of the rights of the parties in an action, and may award relief to which the parties are entitled.” La.Code Civ. P. art. 1841. A valid judgment must be precise, definite and certain. The quality of definiteness is essential to a proper judgment. Bd. Of Supervisors, 14-0506, p. 910; 151 So.3d at 910.
A final judgment shall be identified as such by appropriate language. La.Code Civ. P. art. 1918. “A final appealable judgment must contain decretal language that names the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. Bd. Of Supervisors, 14-0506, pp. 2-3; 151 So.3d at 910. The specific relief granted should be determinable from the judgment without reference to an extrinsic sourced such as pleadings or reasons for judgment.” Id.
Because the judgment from which Mrs. Tomlinson appealed is “lacking *157 in definitive decretal language necessary for the exercise of our appellate jurisdiction, lathe appellant is not entitled as of right to appellate review, but may nonetheless invoke our supervisory jurisdiction, which is discretionary with us to grant.” Id.; La.Code Civ. P. art. 2201. The Louisiana Constitution of 1974 provides intermediate appellate courts with both appellate and supervisory jurisdiction. Bd. Of Supervisors, 14-0506, p. 3; 151 So.3d at 910; La. Const, art. V, § 10(A). “The difference between supervisory jurisdiction and appellate jurisdiction is that the former is discretionary on the part of the appellate court while the latter is invoká-ble by the litigant as a matter of right.” Bd. Of Supervisors, 14-0506, p. 3; 151 So.3d at 910-11.
In some cases, when we are confronted with a judgment in an appellate context that is not final and appealable, we are authorized to exercise our discretion to convert that appeal to an application for supervisory review. Bd. Of Supervisors, 14-0506, pp. 3-4; 151 So.3d at 911.
We have decided to exercise our discretion and convert Mrs. Tomlinson’s appeal to an application for supervisory review, which we grant.
We now turn to the merits of the substantive issues before us.

FACTS AND PROCEDURAL HISTORY

' On March 21, 2012, Mrs. Tomlinson filed suit against Daisy Dukes and Landmark for a slip and fall that occurred on May 1, 2011. Mrs. Tomlinson testified that she was on her way to be seated in the restaurant when she stepped off a commercial rug and onto the wooden floor and fell. As a result, she sustained injuries to her left knee and left side of her body.
LAfter Mrs. Tomlinson was helped off the floor, a Daisy Dukes employee retrieved another commercial rug and placed it over the area where Mrs. Tomlinson fell. Mrs. Tomlinson also testified that after she fell a waitress explained that as an employee she was required to wear certain shoes at work because the floor was “very slick.”
Mrs. Tomlinson later asked to fill out an accident report and to speak, with the manager. However the manager, Ryan Richardson (“Mr. Richardson”), was not present at the time. Additionally, the restaurant did not have accident report forms, nor did it have a policy or procedure in effect for reporting accidents. Mrs. Tomlinson was given Mr. Richardson’s business card, left her contact information with a Daisy Dukes employee, and was informed that Mr. Richardson would call her.
Mrs. Tomlinson’s co-worker, Anita Wals-worth (“Ms. Walsworth”), provided an affidavit stating that she accompanied Mrs. Tomlinson to Daisy Dukes the day of the accident. Although she did not witness the fall, Ms. Walsworth stated that she immediately went to Mrs. Tomlinson’s aid on the floor of the restaurant. Ms. Wals-worth noted that “[a]t that time, [she] noticed that the portion of the wooden floor where Mrs, Tomlinson fell was very slippery.” She also confirmed that a Daisy Dukes employee placed “an industrial-type rug/mat over the portion of the wooden floor where [Mrs. Tomlinson fell].”
Mrs. Tomlinson informed her supervisor about the accident at Daisy Dukes later the same day, and her supervisor called Mr. Richardson twice. The first time, |fiMrs. Tomlinson’s supervisor left a message. Mrs. Tomlinson’s supervisor called a second time the next day (May 2, 2011) when she did not receive a return phoné call. On May 2, 2011, Mr. Richardson returned the supervisor’s call and asked that. Mrs. Tomlinson contact him. Thereafter, he spoke with Mrs. Tomlinson and *158 told her she would receive “some papers at home from Landmark.” Two days later, Mrs. Tomlinson received a call from a representative at Landmark, who told Mrs. Tomlinson to seek medical attention.
In her original petition, Mrs. Tomlinson sought damages for injuries sustained to her left-knee, including a fractured knee cap and injuries to her left hip, requiring continued medical treatment. Mrs. Tom-linson also filed a supplemental petition for damages asserting a claim for Spoliation of evidence relative to the surveillance video of her fall and impairment of a civil action.
Daisy Dükes filed motions for summary judgment on Mrs. Tomlinson’s spoliation and liability claims, which Mrs, Tomlinson opposed.' On December 13, 2013, the trial court held a hearing on the motions for summary judgment. The trial court determined that Daisy Dukes’ destruction of the video surveillance was' done in “the normal course of business' and was not‘willful in nature,” and granted Daisy Dukes’ summary judgment motion on spoliation.
As to the issue of liability, the trial court determined that there wás nó foreign substance on the floor and that Mrs, Tomlinson “has to show that something was there, and it was there at least for a while.” The trial court permitted her to conduct additional discovery on Floor-crafters Wood Floor 1 ^Company, Inc. (“Floorcrafters”), the flooring company that allegedly refurbished the floors of the restaurant.
There is no evidence to show Floorcraft-ers refurbished the interior floors at'Daisy Dukes prior to Mrs. Tomlinson’s fall. The only documents submitted are proposales-timates to refurbish the floors and receipts for work Floorcrafters actually performed. The dates on the estimates and receipts demonstrate that all floor work was done after Mrs., Tomlinson’s fall.
Additionally, Mrs. Tomlinson submitted the affidavit of Philip Beard (“Mr. Beard”), a structural forensic engineer and expert in “forensic investigation of slip, trip, and fall accidents and other accidents within a building.” Mr. Beard reviewed the documents and evidence, including depositions, describing the May 2011 incident at Daisy Dukes' and provided his findings.[1] The parties then filed supplemental briefs.
Ultimately, the trial court granted Daisy Dukes’ summary judgment motion on liability. The trial court found that Mrs. Tomlinson was unable to show that “there was an unreasonably slippery- condition which caused her to fall.” Additionally, the trial court determined that Mrs. Tom-linson did not present factual support which showed the floor was maintained in a manner that would make it unreasonably slippery. Mrs. Tomlinson timely filed an appeal.

STANDARD OF REVIEW

Appellate courts review summary judgments de novo, using the same standards that direct a''trial court’s consideration of whether summary judgment is appropriate. Francis v. Union Carbide Corp., 12-1397, pp. 2-3 (La.App. 4 Cir. 5/8/13); 116 So.3d 858, 860, writ denied, 13-1321 (La.9/20/13); 123 So.3d 177. Under that standard, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and affidavits show, that there is no genuine, issue of material fact. Bilbe v. Foster, 15-0302, p. 5 (La.App. 4 Cir. 9/9/15); 176 So.3d 542, 546. The mover,bears the burden of proof and all doubt should be resolved in favor of the non-moving party. *159 Id. However, if the movant will not bear the burden of proof at trial on the matter addressed in the motion for summary judgment, then the- movant need not negate all essential elements of the adverse party’s claim, action, or defense but only demonstrate for the court a lack of factual support for at least one of the essential elements to the adverse party’s claim, defense, or action. Francis, 12-1897, p. 3; 116 So.3d at 860. The adverse party must then produce factual support to establish that his evidentiary burden at trial will be satisfied, and if he fails, then there is no genuine issue of material fact. Id.
In a civil case, the plaintiff must prove her case by a preponderance of the evidence and the burden may be met by direct or circumstantial evidence. When circumstantial evidence is relied on, the evidence taken as a whole must exclude every other reasonable hypothesis with a fair amount of certainty but does not have to negate every other possible hypothesis. Cotton v. Delta Queen Steamboat Co., 09-0736, p. 5 (La.App. 4 Cir. 1/6/10); 86 So.3d 262, 266. Circumstantial 18evidence may be used to defeat a motion for summary judgment. Wood v. Becnel, 02-1730, p. 6 (La.App. 4 Cir. 2/26/03); 840 So.2d 1225, 1227.
In determining when circumstantial evidence leaves an issue ripe for a jury or other trier of fact, this Court acknowledges that the question of “whether one of the proposed alternative [causes] presents a sufficiently reasonable hypothesis and the question of whether the circumstantial evidence did not exclude these [causes] with a fair amount of certainty are factual ones, which are not appropriate for summary judgment,” Wood, 02-1730, p. 6; 840 So.2d at 1228 (quoting McNamara v. Am. Liberty Ins. Co., 99-175, p. 8 (La.App. 3 Cir. 10/13/99); 745 So.2d 704, 708).
As the plaintiff, Mrs. Tomlinson carries the burden of proof at trial. Thus, Daisy Dukes need only show there is an absence of factual support for one or more elements essential to either of Mrs. Tomlin-son’s claims.

Spoliation Claim

In her first assignment of error, Mrs. Tomlinson contends that the trial court erred- in granting summary judgment in favor of. Daisy Dukes as to her spoliation claim. Mrs. Tomlinson argues -that genuine issues of material fact exist as to whether Daisy Dukes had a “duty to preserve the video of [Mrs. Tomlinson]’s fall and intentionally failed , to do so.” Daisy Dukes claims that Mrs. Tomlinson failed to prove that her fall was captured by the restaurant’s cameras and that the surveillance was intentionally destroyed.
After the instant appeal was lodged: and the parties submitted their briefs, the Louisiana Supreme Court issued Reynolds v. Bordelon, 14-2362 (La.6/30/15); 172 So.3d 589. In Reynolds, the Court examined “the sole issue of whether Louisiana recognizes a claim for negligent spoliation” and concluded that “no cause of action ^exists for negligent spoliation of evidence.” Reynolds, 14-2362, pp. 1, 6; 172 So.3d at 592, 595. In examining this question, the Court implicitly rejected a standard whereby a party who knew or should have known that his conduct would result in harm would be liable for spoliation. Reynolds, 14-2362, p. 7; 172 So.3d at 595-96, 598. Further, the Court found that “the act of negligently spoliating evidence is so unintentional an act that any recognition of the tort ... [would] act to penalize a party who was not aware of its potential wrongdoing in the first place.” Reynolds, 14-2362, p. 9;- 172 So.3d at 597. This Court, however, has long recognized intentional spoliation of evidence. See Kammerer v. Sewerage and Water Bd. of New Orleans, *160 93-1232 (La.App. 4 Cir. 3/15/94); 633 So.2d 1357, 1358; Quinn v. RISO Inv., Inc., 03-0903, p. 5 (La.App. 4 Cir. 3/3/04); 869 So.2d 922, 926-27; Everhardt v. La. Dept. of Transp. and Dev., 07-0981, p. 7 (La.App. 4 Cir. 2/20/08); 978 So.2d 1036, 1044; Tsegaye v. City of New Orleans, 15-0676, p. 1, 183 So.3d 705, 720 (La.App. 4 Cir. 12/18/15).
Under this Court’s jurisprudence, spoliation of evidence refers to the intentional destruction of the evidence for the purpose of depriving the opposing party of its use at trial. Everhardt, 07-0981, p. 7; 978 So.2d at 1044. The remedy for spoliation is that the court may either exclude the spoiled evidence or allow the jury to infer that the spoiled evidence was unfavorable to the spoliator’s case. Id. Before either remedy may be applied, the party having control of the evidence must have had an obligation to preserve it at the time it was destroyed. Id. This duty arises when the party has notice that the evidence is relevant to the litigation. Id. Once the court concludes that a party was obliged to preserve the evidence, it must consider whether the party intentionally destroyed the evidence and the likely contents of the evidence. Id. Thus, an essential element of a spoliation claim is the | mintent of the party alleged to be a spoliator, which after Reynolds must be greater than the general negligence standard.
Here, though there is a discrepancy as to how long Daisy Dukes’ surveillance system preserved videos before automatically recording over them, there is no evidence to suggest that Daisy Dukes intentionally destroyed the video for the purpose of depriving Mrs. Tomlinson of its use at trial. Rather, the record establishes that, regardless of whether Daisy Dukes’ surveillance system preserved videos for three days or two weeks, the surveillance video was erased pursuant to routine business procedures. As such, the record before us presents a dearth of factual support for a finding of intent beyond negligence. Daisy Dukes, as it would not bear the burden of proof at trial, is not required to negate every element of Mrs. Tomlinson’s spoliation claim but only point out the absence of factual support for one or more of the essential elements of the claim, intent. Though Daisy Dukes has not provided written proof of its policy, it has provided deposition testimony establishing that the videos are automatically erased after a period of time. Thus, we affirm the trial court’s grant of the motion for summary judgment on the spoliation claim.

Liability Claim

In her second assignment of error, Mrs. Tomlinson contends that the tidal court erred in granting Daisy Dukes’ motion for summary judgment on liability. At the hearing, the trial court stated, “[t]here was no foreign substance that [it] detected] in any exhibits that were attached... [Mrs. Tomlinson] has to show that something was there, and it was there for at least a while.” In its reasons for judgment, the trial court found that Mrs. Tomlinson “cannot show that there was an unreasonably slippery condition which caused her to fall,” and that she “does not |nhave the support to establish any of the three requisite elements under La. R.S. 9:2800.6.”
First, Mrs. Tomlinson asserts that the trial court did not consider La. Civ.Code art. 2317.1. She urges that regardless of the trial court’s ruling on La. R.S. 9:2800.6, the Merchant Liability Statute, she still has a viable claim under La. Civ.Code art. 2317.1. In Thomas v. Caesars Entm't Operating Co., we explained that Section D of La. R.S. 9:2800.6 preserves the right to a claim under La. Civ.Code art. 2317.1. Thomas v. Caesers Entm’t Operating Co., *161 12-1202, p. 4 (La.App. 4 Cir. 1/23/13); 106 So.3d 1279, 1282. Under La. Civ.Code art. 2317.1, the plaintiff must prove that: 1) there was.a ruin, vice or defect in the defendant’s premises; 2) the defendant knew or should have known of the ruin, vice, or defect; and 3) the plaintiffs fall could have been prevented with the defendant’s exercise of reasonable care. Id.
Daisy Dukes claims the trial court did not consider a claim under La. Civ.Code art. 2317.1 because the elements of both statutes “are one in the same.” Daisy Dukes contends that it is also unable to carry its burden under La. Civ.Code art. 2317.1 since the trial court found Mrs. Tomlinson failed to present, evidence to meet any element of La. R.S. 9:2800.6. The trial court’s written reasons for judgment make no mention of La. Civ.Code art. 2317.1. However, for the reasons discussed in greater detail below, we find there is sufficient evidence for Mrs. Tom-linson to satisfy her evidentiary burden at trial.

Merchant Liability Statute

La. R.S. 9:2800.6 governs negligence claims brought against merchants like Daisy Dukes. The Merchant Liability Statute states in pertinent part:
LaA. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition; This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, 'to prove failure to exercise reasonable care.
To determine whether a condition is unreasonably dangerous, courts engage in a risk-utility analysis which considers: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of the harm, including the obviousness and ap-parentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiffs activities in terms of its social utility or whether it is dangerous by nature. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98); 708 So.2d 362, 366; Ruffino v. Allstate Ins. Co., 07-0420, p. 2 (La.App. 4 Cir. 9/19/07); 968 So.2d 729, 730; Guerrero v. Brookshire Grocery Co., 49,707, pp. 7-8 (La.App. 2 Cir. 4/29/16); 165 So.3d 1092, 1098.
Mrs. Tomlinson alleges that genuine issues of material fact exist as to whether, the floor’s condition, a consequence of the manner in which they were kept, presented an unreasonable risk of harm.. Specifically, she contends the slick condition in which the floors were kept caused her to slip and fall.
|1RAt the time of the incident, Daisy Dukes had four commercial rugs that went *162 from the' entryway 1 to the back of the restaurant. Mrs. Tomlinson’s slip and fall occurred as a waitress led Mrs. Tomlinson and the rest of her party to their -table “at the back and to the left” of the restaurant. Mrs. Tomlinson testified that she had no problems seeing inside the establishment. Before reaching the table, Mrs. Tomlinson stepped off one of the commercial rugs and slipped, landing on her backside. Her colleague Ms. Walsworth, did not witness the fall, but after Mrs, Tomlinson was helped off the ground she noticed that the floor was slippery where Mrs. Tomlinson fell. Mrs. Tomlinson also told her treating physicians that the “floor was slick” causing her to fall when she stepped off the commercial rug. There is no evidence submitted to suggest that the shoes Mrs, Tomlin-son wore that day contributed to her fall.
Daisy Dukes contends that Mrs, Tomlin-son’s testimony as well as that of her colleague fails to show how, who, when or what caused this alleged ‘slippery’ condition. It argues that “[t]he mere happening of an accident does not engender a presumption that defects are present.” Kendrick v. La. & Nw. R.R. Co,, 33,810, pp. 13-14 (La.App. 2 Cir. 8/23/00); 766 So.2d 705, 715. Moreover, Daisy Dukes suggests to this Court that Mrs. Tomlin-son, herself, concedes she slipped on the “bare floor.” We find this contention is á mischaracterization of her testimony. Her remarks about a “bare floor” were in response to questions about the type of floors Daisy Dukes had inside its restaurant. Her statement was not in response to what caused her to -fall or what she observed on the floor after she fell. Thus, we do not find this portion of Mrs. Tomlin-son’s testimony establishes that there are no genuine issues of material fact warranting summary judgment.
luThe trial court found that Mrs. Tom-linson was required to show something was on the floor and it was present for some period of time in order to‘ overcome summary judgment. On appeal, Daisy Dukes’ argument suggests that because Mrs. Tomlinson has not offered direct evidence of “how, who, when or what caused this alleged ‘slippery’ condition,” Daisy Dukes should not be held liable. * .
On the other hand, “proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole,' such proof shows that the fact or causation sought to be proved is more probable than not.” Wood, 02-1730, p. 5; 840 So.2d at 1227 (quoting Jordan v. Travelers Ins. Co., 257 La. 995, 1008, 245 So.2d 151, 155 (1971)). This Court also recognized that “factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent’s favor.” Wood, 02-1730, p. 7, 840 So.2d at 1228 (quoting Knowles v. McCright’s Pharmacy, Inc., 34,559, p. 3 (La.App. 2 Cir. 4/4/01); 785 So.2d 101, 103).
" Daisy Dukes asserts that Mrs. Tomlin-son relies solely on the fact that Daisy Dukes has produced no evidence of its cleanup policies and procedures to defeat its motion for summary judgment. It argues that a material issue is not created by the fact that it could not produce records relating to its yearly floor refurbishing and its daily maintenance logs completed by its employees. We agree to the extent that a claimant attempts to establish that a merchant failed to exercise reasonable care by the absence of a “written or verbal uniform cleanup or safety procedure”; this, however, is “insufficient, alone, to prove failure to exercise reasonable care.” La. R.S. 9:2800.6(B)(3).
However, Mrs. Tomlinson does not rely solely on the lack of written or verbal cleanup or safety procedures to establish a *163 genuine issue of material fact, h ¿Rather, she suggests that the lack of written and verbal procedures, along with other circumstantial evidence, is sufficient to preclude granting summary judgment. At issue is whether Daisy Dukes maintained the floor in a manner that created an unreasonable-risk of harm and -that the condition, caused Mrs. Tomlinson to slip and fall.
Although there are no written records pertaining to the refurbishing of Daisy Dukes’ floors, we find factual disputes exist as to when- the floors were allegedly refurbished. Mr. Richardson and other employees testified that they were refurbished on a yearly basis. In its appellate brief, Daisy Dukes alleges that the floors were likely refurbished approximately one (1) or two (2) months before” Mrsi Tomlinson’s fall.
However, there is conflicting deposition testimony between two of Daisy Dukes’ employees. Ms. Pecoraro testified that the floors were refurbished during its slow season around March or April while Mr. Richardson testified that the floors were not refurbished until June or July of each year. The Floorcrafters proposals and estimates also indicate that work was not performed until sometime after Mrs. Tom-linson’s accident.
Further, Mrs. Tomlinson contends that Mr. Beard’s expert report establishes that the restaurant’s floor becomes unreasonably slippery if it is not routinely and properly cleaned to “degrease the floor surfaces and remove slippery conditions.” When a party moving or opposing summary judgment submits expert opinion evidence, the trial court must consider that evidence if it would be admissible at trial. Indep. Fire Ins. Co. v. Sunbeam Corp., 98-2181, 99-2257, p. 1 (La.2/29/00); 755 So.2d 226, 228.
|,(¡Daisy Dukes claims Mr. Beard’s expert affidavit and report is inadmissible because it lacks a specific factual basis for his findings and instead makes conclusory assumptions. The restaurant asserts that Mr. Beard never inspected or examined its floor, and he does not have any-knowledge of Daisy Dukes’ “cooking practices or the grease products- which it used.” Daisy Dukes also claims he failed to inspect Mrs. Tomlinson’s shoes and did not identify-the’ type or composition of the restaurant’s floor before offering his report. .
Mr. Beard reviewed the deposition testimony of Mrs. Tomlinson, the restaurant’s staff and manager, the affidavit of Mrs. Tomlinson’s co-worker, as well as the petition for damages, and Daisy Dukes’ motion for summary judgment. The report also demonstrates that Mr. Beard’s conclusions, which cite specific facts elicited from deposition testimony, are based on his knowledge and training as a structural engineer and expert in forensic investigation of slip and fall accidents in buildings. We -find that Daisy Dukes’ contentions as to the admissibility of Mr. Beard’s report are without merit.[2]
Daisy Dukes also submits that the report’s conclusions are flawed because: (1) the report did not take into consideration the deposition testimony of Floorcrafters; and (2) the report is undermined by Mrs. Tomlinson’s testimony that she fell on the ‘bare floor’ and by testimony of a Daisy *164 Dukes employee that allegedly inspected the floor after Mrs. Tomlinson’s fall.
First, in its appellee brief, Daisy Dukes relies on Floorerafters’ deposition testimony to show that refurbishing the floors only concerns appearance and does |17not help with traction and that a refurbished floor is more slippery than one that is not. Daisy Dukes suggests that testimony from Floorerafters was “selectively not included by” Mrs. Tomlinson in her supplemental memorandum in opposition to summary judgment. We note, however, that Daisy Dukes also failed to include Floorerafters’ deposition testimony to support its summary judgment motion. Consequently, this Court will not take into consideration evidence that was not offered in the trial court. Second, a determination of whether or not the report is “undermined” by competing testimonial evidence demands a weighing of the evidence — a duty that inherently belongs to the jury or other trier of fact.[3] Therefore, we find this argument without merit and turn our attention to the substance of the report’s findings.
Mr. Beard stated that “the potential for misstep on the wood floor appears to have been the likely presence of grease on the floor surface from the restaurant cooking operation.” He noted that “[a]ll hard floor surfaces, particularly wood, lose slip resistance with' age and wear and must be monitored on a routine basis to reduce the incidence of slipping.” Additionally, a grease-contaminated floor is often a “surprise” and “unobserved” and a common problem in restaurants where precipitated airborne grease particles reach the floor. He opined that the risk of slipping in this instance was “high” based on the information gathered from the depositions of Daisy Dukes’ employees and Ms. Walsworth. Particularly, all 11semployees were required to wear non-slip shoes in the restaurant and the employees noticed a difference between the floors before and after the floors are redone. One employee testified that the floors “would be shinier ... Cleaner looking. Because you get black [sic] from people’s shoes, [sic] they start sticking on the floor before long.” The same employee indicated that Daisy Dukes had a sign at the kitchen entrance requiring non-slip shoes before entering.
Likewise, the report concluded that Daisy Dukes'failed to meet industry standards for the proper maintenance of interior floors of a restaurant based on testimony regarding Daisy Dukes’ cleaning practices in place at the time of the accident. Wait staff testified that they were responsible for sweeping the floors and vacuuming the rugs after each shift, but they did not mop the floors. After Mrs. Tomlinson’s accident nothing was done to clean the floors. Restaurant employees testified that the only time the floors are mopped is when a spill occurs.
Daisy Dukes also alleged that it had a policy that required staff to inspect their stations on a regular basis and that logs were kept to ensure this policy was followed. However, Daisy Dukes could not produce the logs or other evidence that supported its claim that the policy was followed or was in place at the time of the *165 accident. Mrs.- Tomlinson testified that a Daisy Dukes employee, whom she identified as the woman that waited on their table and that was wearing Crocs[4] the day she fell, told her that someone else had previously fallen in the restaurant.
Moreover, the report indicated that Mr. Richardson’s testimony verified the presence of airborne grease particles in the restaurant. Mr. Richardson stated that he replaced the sign in the restaurant requiring non-slip shoes because “[i]t was greasy, yellow-looking, scratched up, [and] written on.” The report concluded that logrease buildup on the sign outside the kitchen is “an indicator that more likely than not it was also reaching the floor surfaces throughout the restaurant through the HVAC system.”
In order to overcome summary judgment, Mrs. Tomlinson must demonstrate that the evidence “excludes with a fair, but not absolute, amount of certainty all reasonable hypotheses” for the cause of her injury other than Daisy Dukes’ failure to properly maintain its floors. Wood, 02-1730, p. 8; 840 So.2d at 1229.
The record demonstrates that Mrs. Tomlinson was invited as a patron into the restaurant to have breakfast when she slipped and fell. She stated that she had no difficulty seeing inside the restaurant. Similarly, there is no indication that the shoes Mrs. Tomlinson wore that day contributed to her fall. Daisy Dukes had a policy requiring all staff to wear non-slip shoes, and that it placed commercial rugs that led from the restaurant’s entrance all the way to the kitchen.
Mrs. Tomlinson testified that she fell when she stepped off the commercial rug and onto the wood floor, noticing that the condition of the floor was very slippery. Her co-worker also noticed the floor was slippery. A structural engineer expert opined that grease buildup on the sign in Daisy Dukes is an indicator of “precipitated airborne grease particles” that can-reach the floors through the HVAC system; that the normal movement of Daisy Dukes’ service personnel from the kitchen and throughout the restaurant tracks grease onto the floors; that Daisy Dukes was aware of the risk of a slip and fall, requiring all employees to wear nonslip shoes and to place rugs in its restaurant; that Daisy Dukes’ cleaning procedures fell below industry standards as it only mopped the floors when a spill occurred; lanand that Mrs. Tomlinson’s fall was the result of Daisy Dukes’ failure to properly and routinely clean and degrease the floors.
Accordingly, we find Mrs. Tomlinson has submitted sufficient evidence from which a jury or other trier of fact may reasonably infer that Daisy Dukes’ failure to routinely and properly maintain the floors in a safe condition caused her to slip and fall. Additionally, because the manner in which the interior floors were kept is material to a determination of whether they posed an unreasonable risk of harm, we also find that, at the very least, additional discovery is needed; thus, summary judgment is precluded. See Fischer III, LLC v. Williams, 14-0492, p. 11 (La.App. 4 Cir. 12/17/14); 156 So.3d 1255, 1261 (finding that discrepancies in the sub-leases and the need for more discovery precluded granting summary judgment). Therefore, we reverse the trial court’s granting of summary judgment on liability.

DECREE

We convert Mrs. Tomlinson’s appeal to an application for supervisory writs and grant the writ. Considering that Daisy *166 Dukes has shown a lack of factual support for the requisite intent necessary for a spoliation claim and Mrs, Tomlinson did not provide factual support to demonstrate she would meet her evidentiary burden at trial, summary judgment was appropriate on the spoliation claim. :-As to the liability issue, considering the circumstantial evidence presented, the contradictory testimony, and the need for additional discovery to be conducted, we find genuine issues of material fact exist. Therefore, we affirm the trial court’s judgment as to Mrs. Tomlinson’s spoliation claim and reverse the trial court’s judgment as to Mrs. Tomlinson’s liability claim. The case is x-emanded for further proceedings in line with this opinion.
APPEAL CONVERTED TO WRIT APPLICATION; WRIT GRANTED; REVERSED IN PARÍ; GRANTED IN PART; REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

. Mr. Beard’s expert report and findings are discussed in greater detail in our review of the trial court’s granting of summary judgment on the issue of liability.

. The claim that Mrs, Tomlinson's expert does not have knowledge of its cooking or cleaning practices—assuming that such evidence exists outside what is contained in the record— underscores this Court’s finding that genuine issues of material fact exist as to whether the floors were properly maintained. At the very least, this issue requires additional discovery, making summary judgment inappropriate at this stage in the proceedings. ■ '

. Cf., Schroeder v. Walgreens Family of Companies, 14-2238 (La. 1/23/15); 159 So.3d 449 (The plaintiff alleged that the floor was still wet at the time she fell. However, the store’s manager provided an affidavit stating that she personally observed the area where the spill occurred and it was dry. The manager also testified that the plaintiff did not have any wet clothing after her fall. The Supreme Court found genuine issues of material fact existed regarding whether liquid or moisture was on the floor at the time or place of the plaintiff’s slip and fall. Therefore, it concluded that at the present stage of the proceedings summary judgment was inappropriate.)

. Crocs are a type of slip-resistant shoe.