JEANNE MARIE EHLERS     *     NO. 2023-CA-0575
AND LISA GETHERS
ARMOUR, INDIVIDUALLY     *
AND ON BEHALF OF            COURT OF APPEAL
DECEDENT, FREDERICK     *
LOUIS GETHERS              FOURTH CIRCUIT

                    *

VERSUS                   STATE OF LOUISIANA

         * * * * * * *

PORTS AMERICA
GULFPORT, INC., ET AL.

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-02151, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Karen K. Herman**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Sandra Cabrina Jenkins,
Judge Karen K. Herman)


Edwin A. Ellinghausen, III
Erin H. Boyd
BLUE WILLIAMS, L.L.C.
3421 N. Causeway Blvd., Suite 900
Metairie, LA. 70002

Richard P. Salloum (*pro hac vice*)
FRANKE & SALLOUM, PLLC
10071 Lorraine Road
Gulfport, MS. 39503

      COUNSEL FOR DEFENDANT/APPELLEE, SSA GULF, INC. LEGAL
SUCCESSOR TO RYAN STEVEDORING COMPANY AND RYAN WALSH
STEVEDORING COMPANY


E. Scott Hackenberg
John L. Henchy
HENCHY VERBOIS & HACKENBURG
7737 Old Hammond Highway, Suite B-4
Baton Rouge, LA. 70809

COUNSEL FOR DEFENDANT/APPELLANT, THE LOUISIANA
INSURANCE GUARANTY ASSOCIATION

**AFFIRMED IN PART; APPEAL CONVERTED TO AN APPLICATION
FOR SUPERVISORY WRIT; WRIT GRANTED; RELIEF DENIED**

**MAY 16, 2024**

This is an asbestos exposure case. Intervenor/defendant-in-reconvention, the Louisiana Insurance Guaranty Association ("LIGA"), appeals: 1) the March 15, 2022 judgment denying LIGA's motion for summary judgment; and 2) the May 17, 2023 judgment granting a motion for summary judgment in favor of defendant, SSA Gulf, Inc., legal successor to Ryan Stevedoring Company and Ryan Walsh Stevedoring Company (collectively, "SSA Gulf" referring to SSA Gulf and its legal predecessors), and denying LIGA's exception of lack of subject matter jurisdiction.

For the reasons that follow, we affirm the March 15, 2022 judgment denying LIGA's motion for summary judgment, and we affirm, in part, the May 17, 2023 judgment granting summary judgment in favor of SSA Gulf. We convert the appeal of the denial of LIGA's exception of lack of subject matter jurisdiction to an application for supervisory writ. The writ is granted, and the relief requested is denied.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

In 2021, the Ehlers/Gethers family ("plaintiffs") filed suit against numerous defendants alleging that Frederick Gethers ("Mr. Gethers") was exposed to

1

asbestos while working at the Port of New Orleans from 1947 to 1979. Plaintiffs allege that Mr. Gethers was diagnosed with mesothelioma in January 2021, and died a short time later.

SSA Gulf employed Mr. Gethers from 1957 to 1969, and from 1972 to 1978. SSA Gulf is named as a defendant in this action as Mr. Gethers' employer. As SSA Gulf correctly asserts, the relevant time period for the action against SSA Gulf ended on September 1, 1975, the date when mesothelioma became a covered occupational disease under the Louisiana Workers' Compensation Act ("LWCA").[1]

Plaintiffs maintain that SSA Gulf was insured for workers' compensation and employer's liability ("WC/EL") insurance by American Mutual Liability Insurance Company ("AMLICO") from 1958 to 1970, and by Employers National Insurance Company ("ENIC") from 1970 to 1987. After AMLICO and ENIC became insolvent, LIGA assumed its statutory obligation to SSA Gulf pursuant to La. R.S. 22:2051, *et seq*. (formerly La. R.S. 22:1375, *et seq*).

In March 2021, LIGA agreed to provide a defense to SSA Gulf subject to a reservation of rights, asserting all defenses available under the pertinent policies. In April 2021, LIGA asserted a defense claiming that the AMLICO and ENIC policies issued to SSA Gulf contained an exclusion ("Exclusion"), which required an occupational cancer claim to be filed within thirty six months of the expiration of the policies. Mr. Gethers' action was not filed within that time frame. In May

---

[1] Prior to September 1, 1975, tort claims against an employer for occupational asbestos-related cancers were allowed in Louisiana. With the amendment of La. R.S. 23:1031.1(A) in 1975, mesothelioma is included as an occupational disease under the LWCA. (*See* 1975 La. Acts No. 583).

2021, LIGA filed a petition for intervention asserting coverage issues against SSA Gulf.

In January 2022, LIGA filed a motion for summary judgment denying any coverage obligation pursuant to the 36-month Exclusion for claims arising out of an occupational disease contained in the Coverage B section of the AMLICO and ENIC policies. LIGA avers that pursuant to the Exclusion, plaintiffs' claims were not timely.

As discussed in more detail below, LIGA was unable to produce the actual policies issued to SSA Gulf in connection with this matter. Rather, in support of its motion for summary judgment, LIGA relied on certain circumstantial evidence including a National Council on Compensation Insurance ("NCCI") Standard Form WC/EL Policy (issued to an unrelated insured), which does include the subject Exclusion. It was LIGA's contention that as members of the NCCI, all WC/EL policies issued by AMLICO and ENIC would have utilized this Standard Form Policy.

The NCCI Standard Form Policy provides, in pertinent part:

**DECLARATIONS**

3. Coverage A of this policy applies to the workmen's compensation law ***and any occupational disease law of each of the following states: LA*** (Emphasis added).

**INSURING AGREEMENTS**

**COVERAGE A - WORKMEN'S COMPENSATION**
TO PAY promptly when due all compensation and other benefits required of the insured by the workmen's compensation law.

**COVERAGE B - EMPLOYERS' LIABILITY**
TO PAY on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom, sustained in the United States of American, its territories or

3

possessions, or Canada by any employee of the insured arising out of and in the course of his employment by the insured either in operations in a state designated in Item 3 of the declarations or in operations necessary or incidental hereto.

**DEFINITIONS**

(a) Workmen's Compensation Law. The unqualified term "workmen's compensation law" means the workmen's compensation law and any occupational disease law of a state designated in Item 3 of the declarations, but does not include those provisions of any such law which provide non- occupational disability benefits.

**EXCLUSIONS**

This policy does not apply ...

*(e) under coverage B, to bodily injury by disease unless prior to thirty-six months after the end of the policy period written claim is made or suit is brought against the insured for damages because of such injury or death resulting therefrom;* (Emphasis added).

SSA Gulf opposed LIGA's motion for summary judgment arguing that LIGA did not meet its burden of proving that the Exclusion was actually contained in any of the WC/EL policies issued to SSA Gulf by AMLICO and/or ENIC during the relevant time period. In a judgment rendered March 15, 2022, the trial court denied LIGA's motion for summary judgment, finding that "there are genuine issues of material fact as to whether the insurance policies issued to SSA Gulf . . . contain the 36-month exclusion in Louisiana."

In April 2022, SSA Gulf filed a reconventional demand against LIGA asserting that SSA Gulf settled with plaintiffs, and thus, LIGA was obligated to indemnify/reimburse SSA Gulf to the extent of its statutory limits. In the alternative, SSA Gulf sought judgment against LIGA as assignee of plaintiffs' claims against LIGA.

In March 2023, SSA Gulf filed a motion for summary judgment as to LIGA's coverage obligations, raising the issue of the Exclusion previously set

4

forth in LIGA's motion for summary judgment. SSA Gulf once again advanced the argument that LIGA could not produce evidence to carry its burden of proof that any policies issued by AMLICO and ENIC to SSA Gulf contained the Exclusion.

In the alternative, SSA Gulf argued: 1) if the trial court were to find a fact issue as to the contents of the policies (namely, the Exclusion), then Coverage A of the policies may reasonably be interpreted to include plaintiffs' claims; and 2) if the trial court finds Coverage A inapplicable, then the Exclusion should be considered an impossible or unenforceable condition due to mesothelioma's decades-long latency period.

LIGA opposed the motion for summary judgment. SSA Gulf and LIGA essentially relied on the same evidence submitted in connection with LIGA's motion for summary judgment.

In April 2023, in response to the *alternative* arguments raised in SSA Gulf's motion for summary judgment, LIGA filed an exception of lack of subject matter jurisdiction, rejecting SSA Gulf's claim that if coverage is denied based on the Coverage B Exclusion, then a claim could still be brought under the Coverage A section of the policy. LIGA argued therein that Coverage A does not provide "fallback" tort coverage because the insurer's obligation under Coverage A only applies to pay compensation and benefits under the LWCA. LIGA further noted that plaintiffs have not asserted a claim for compensation under the LWCA.[2]

The matters were brought for hearing on April 27, 2023. Judgment was rendered May 17, 2023, denying LIGA's exception of lack of subject matter jurisdiction. The trial court also granted SSA Gulf's motion for summary

---

[2] SSA Gulf concedes that this is a tort action.

5

judgment, designating it as a final judgment pursuant to La. C.C.P. art. 1915(B)(1). On that issue, the judgment provides, in pertinent part:

> The Court finds that there are no genuine issues of material fact. The Court further finds that SSA Gulf is entitled to judgment as a matter of law on the grounds that LIGA has failed to sustain its burden of proving that the Workmen's Compensation and Employers' Liability (WC/EL) insurance policies issued to SSA Gulfs legal predecessors, Ryan Stevedoring Company and Ryan Walsh Stevedoring Company, by American Mutual Liability Insurance Company ("AMLICO") and/or by Employers National Insurance Company ("LIG") between 1957 and September 1, 1975 contained a 36-month exclusion (a/k/a Exclusion (e)) in Louisiana. ***In the alternative***, the Court finds no genuine issues of material fact and as a matter of law that: (1) Coverage A of the relevant AMLICO and ENIC WC/EL policies provides coverage for the occupational disease tort claims brought against SSA Gulf by the Jeanne Marie Ehlers plaintiffs and the related indemnity claim brought by SSA Gulf against LIGA to recover settlement funds paid to the Jeanne Marie Ehlers plaintiffs; and (2) the 36-month exclusion (a/k/a Exclusion (e)) is an impossible condition for long-latency occupational disease claims, including the mesothelioma contracted by the decedent, Frederick Gethers, which manifested more than 40 years from the time of Mr. Gethers' alleged occupational exposure to asbestos, and which therefore does not preclude coverage under the relevant AMLICO and ENIC WC/EL policies for the tort claims brought against SSA Gulf by the Jeanne Marie Ehlers plaintiffs and the related indemnity claim brought by SSA Gulf against LIGA to recover settlement funds paid to the Jeanne Marie Ehlers plaintiffs. (emphasis added).

LIGA's appeal of both judgments followed.

## LAW AND ANALYSIS

### Jurisdictional issue

LIGA seeks review of the March 15, 2022 judgment denying its motion for summary judgment. LIGA also seeks review of the May 17, 2023 judgment granting SSA Gulf's motion for summary judgment and denying LIGA's exception of lack of subject matter jurisdiction.

"Appellate courts have a duty to determine *sua sponte*, whether the court has proper jurisdiction to consider the merits of an appeal filed in the court." *Joseph v.*

6

*Wasserman*, 2021-0138, p. 3 (La. App. 4 Cir. 12/17/21), 334 So.3d 413, 416. Pursuant to La. C.C.P. art. 2083, "an appellate court's jurisdiction extends to final judgments and judgments made expressly appealable by law." *McGaha v Franklin Homes, Inc.*, 2021-0244, p. 24 (La. App. 4 Cir. 2/4/22), 335 So.3d 842, 858 (citing *Riley v. Plaquemines Par. Sheriff's Office*, 2020-0262, pp. 3-4 (La. App. 4 Cir. 9/9/20), 365 So.3d 38, 40). "A final judgment that determines the merits in whole or in part is a final judgment." La. C.C.P. art. 1841. An interlocutory judgment is one that determines "preliminary matters in the course of the action." *Id.*

It is well-established that, a judgment denying a motion for summary judgment is not appealable. *Elysian, Inc. v. Neal Auction Co., Inc.*, 2020-0674, p. 7 (La. App. 4 Cir. 7/21/21), 325 So.3d 1075, 1082 (citing La. C.C.P. art. 968). However, it is generally held that where cross-motions for summary judgment raise the same issues, courts can review the denial of a summary judgment in addressing the appeal of the granting of the cross-motion for summary judgment. *See Williams v BestComp, Inc*, 2022-00100 (La. 12/9/22), 354 So.3d 1211 n. 9; *Marseilles Homeowners Condo Ass'n v. Broadmoor, LLC*, 2012-1233 (La. App. 4 Cir. 2/27/13), 111 So.3d 1099, 1103 n. 2. Although the motions for summary judgment at issue here were not rendered at the same time, they are, in effect, cross-motions as they concern the same coverage issues and the same evidence. As such, we will review the judgment denying LIGA's motion for summary judgment in this appeal.

We also note that the judgment denying LIGA's exception of lack of subject matter jurisdiction is an interlocutory judgment. As this Court explained in *Pizzati v. DS Services of America, Inc.*, 2021-0344, pp. 17-18 (La. App. 4 Cir. 3/23/22), 336 So.3d 943, 955,

7

"It is well-settled that although an interlocutory judgment may not itself be immediately appealable, it is nevertheless subject to review by an appellate court when an appealable judgment is rendered in the case." *Elysian, Inc. v. Neal Auction Co*., 2020-0674, p. 9 (La. App. 4 Cir. 7/21/21), 325 So.3d 1075, 1083 (citing *People of the Living God v. Chantilly Corp*., 251 La. 943, 207 So.2d 752, 753 (1968); *Phillips v. Gibbs*, 2010-0175, p. 4 (La. App. 4 Cir. 5/21/10), 39 So.3d 795, 798). "[A]n appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to them, in addition to review of the final judgment ***when an unrestricted appeal is taken***." *Treas* v. *Koerner*, unpub., 2019-0390, p. 11 (La. App. 4 Cir. 11/13/19), 2019 WL 5582386, at \*5 (quoting *Maqubool v. Sewerage & Water Bd. of New Orleans*, 2018-0572, p. 3 (La. App. 4 Cir. 11/14/18), 259 So.3d 630, 632-33) (emphasis added).

In the present matter, however, the appeal from the judgment granting summary judgment *as to coverage* in favor of SSA Gulf is not an "unrestricted appeal." Rather, pursuant La. C.C.P. art. 1915(B)(1), it is a restricted appeal limited to the issues raised.[3] As such, plaintiffs may not seek review of the interlocutory judgment on the denial of the exception of lack of subject matter jurisdiction within this appeal. *See McGaha*, 2021-0244, p. 28, 335 So.3d at 860.

"The proper procedural vehicle to seek review of an interlocutory judgment that is not immediately appealable is an application for supervisory writ." *Waiters v. deVille*, 2020-0556, p. 1 (La. App. 4 Cir. 12/30/20), 365 So.3d 544, 548 (quoting *Delahoussaye v. Tulane Univ. Hosp. & Clinic*, 2012-0906, p. 4 (La. App. 4 Cir. 2/20/13), 155 So.3d 560, 562). It is well-established that "we have the discretion to convert an improperly filed appeal to an application for supervisory review and then exercise our supervisory jurisdiction." *Crosby v Sahuque Realty, Co., Inc*.,

---

[3] La. C.C.P. art. 1915(B)(1) provides:

> When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

8

2023-0012, p. 7 (La. App. 4 Cir. 8/14/23), 370 So.3d 1206, 1211 (citing *Stelluto v. Stelluto*, 2005-0074, p. 7 (La. 6/29/05), 914 So.2d 34, 39).

As further stated in *Succession of Thompson*, 2020-0536, p. 2 (La. App. 4 Cir 12/30/20), 366 So.3d 307, 310,

> [T]his Court has converted a non-appealable judgment to an application for supervisory writs when the following two conditions have been met: (1) [t]he motion for appeal has been filed within the thirty-day time period allowed for the filing of an application for supervisory writs under La. Unif. R. Ct. App. 4-3; and (2) [w]hen the circumstances indicate that an immediate decision of the issue sought to be appealed is necessary to ensure fundamental fairness and judicial efficiency, such as where reversal of the trial court's decision would terminate the litigation."

In the case *sub judice*, we find that both conditions were met. LIGA filed this appeal within thirty days of the May 17, 2023 judgment. Additionally, the judgment denying LIGA's exception of lack of subject matter jurisdiction concerns the applicability of the Coverage A section of the policies in question, which is inextricably linked to the issues raised in the motions for summary judgment. As such, we find that an immediate decision is necessary to ensure fundamental fairness and judicial efficiency. Accordingly, we convert the appeal of the denial of LIGA's exception of lack of subject matter jurisdiction to an application for supervisory writ.

***Assignments of Error***

LIGA presents the following assignments of error:

1. The trial court erred in granting SSA Gulf's motion for summary judgment because the evidence submitted was insufficient and inadmissible;

2. The trial court erred in denying LIGA's motion for summary judgment because LIGA established through competent evidence that: a) any policy issued by AMLICO or ENIC to SSA Gulf would have included the NCCI

9

Standard Form Policy; b) the only coverage available under that form was Coverage B; and c) Coverage B is subject to the Exclusion;

3. The trial court erred in overruling LIGA's exception of lack of subject matter jurisdiction as to SSA Gulf's Coverage A claims;

4. The trial court erred in weighing expert testimony in connection with the Coverage A claim;

5. The trial court erred in finding that Coverage A applied to a claim for reimbursement of a tort settlement;

6. The trial court erred in not enforcing the Exclusion.

For ease of discussion, we will review the assignments of error by issue, *i.e.*, the motions of summary judgment and the exception of lack of subject matter jurisdiction.

***The Motions for Summary Judgment***

In denying LIGA's motion for summary judgment, and granting SSA Gulf's motion for summary judgment, the trial court concluded that LIGA failed to sustain its burden of proving that the policies issued to SSA Gulf contained the Exclusion. Based on our thorough review of the record, and for the reasons assigned below, we find no error in that determination.

"A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Planchard v. New Hotel Monteleone, LLC*, 2021-00347, pp. 2-3 (La. 12/10/21), 332 So.3d 623, 625 (citations omitted).

10

The summary judgment procedure is favored; and the procedure "is designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

A shifting burden of proof is set forth in La. C.C.P. art. 966(D)(1), which provides:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

A genuine issue is one as to which reasonable persons could disagree, "[i]f on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for trial on that issue[,]" and summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. "A fact is material when its existence or nonexistence may be essential to the plaintiffs [sic] cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Chapital v. Harry Kelleher & Co., Inc.*, 2013-1606, p. 5 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 81 (citation omitted).

As this Court stated in *Tomlinson v. Landmark Am. Ins. Co*., 2015-276, pp.

7-8 (La. App. 4 Cir. 3/23/16), 192 So.3d 153, 159,

> In a civil case, the plaintiff must prove her case by a preponderance of the evidence and the burden may be met by direct or circumstantial evidence. When circumstantial evidence is relied on, the evidence taken as a whole must exclude every other reasonable hypothesis with a fair amount of certainty but does not have to negate every other possible hypothesis. *Cotton v. Delta Queen Steamboat Co*., 09-0736, p. 5 (La. App. 4 Cir. 1/6/10); 36 So.3d 262, 266. Circumstantial evidence may be used to defeat a motion for summary judgment. *Wood v. Becnel*, 02-1730, p. 6 (La. App. 4 Cir. 2/26/03); 840 So.2d 1225, 1227.

"Whether an insurance policy provides for, or precludes, coverage as a

matter of law is an issue that can be resolved within the framework of a motion for

summary judgment." *Certain Underwriters at Lloyd's of London v Duxworth*

*Roofing and Sheetmetal, Inc*. 2022-0821, p. 7 (La. App. 4 Cir. 7/18/23), 370 So.3d

1144, 1149 (quoting *Wagner v. Tammany Holding Co., LLC*., 2013-0374, p. 7 (La.

App. 4 Cir. 10/9/13), 135 So.3d 77, 82).

"An insurance policy is a contract between the parties and should be

construed employing the general rules of interpretation of contracts set forth in the

Louisiana Civil Code." *Choice Foundation v. Law Industries, LLC*, 2021-0431, p.

4 (La. App. 4 Cir. 3/2/22), 336 So.3d 501, 505. Regarding policy exclusions, this

Court recently stated:

> [A]lthough an insurer can limit its liability if, in so doing, this does not result in a conflict with statutory provisions or public policy, the insurer bears the burden of proof if it claims that a loss falls within a policy exclusion. *Choice Found. v. Law Indus., LLC,* 2021-0431, p. 4 (La. App. 4 Cir. 3/2/22), 336 So.3d 501, 505 (quoting *Perniciaro v. McInnis*, 2018-0113, p. 10 (La. App. 4 Cir. 9/7/18), 255 So.3d 1223, 1231). "[A] provision which seeks to narrow the insurer's obligation is strictly construed against the insurer ...." *Reynolds v. Select Props*., 1993-1480 (La. 04/11/94), 634 So.2d 1180, 1183 (citing *Garcia v. St. Bernard Sch. Bd*., 576 So.2d 975, 976 (La. 1991); *Breland v. Schilling*, 550 So.2d 609, 610 (La. 1989)).

*Lewis v State Nat'l Ins. Co., Inc*., 2022-0693, p. 24 (La. 4 Cir. 5/19/23, 368 So.3d 653, 668,

Here, LIGA seeks to deny coverage based on the Exclusion. Pursuant to the authority cited above, LIGA bears the burden of proving that the Exclusion applies.

LIGA maintains that any policies issued by AMLICO and ENIC to SSA Gulf would have contained the Exclusion. It is undisputed that LIGA could not produce the actual policies issued by AMLICO and/or ENIC to SSA Gulf in the State of Louisiana. As the statutory obligor for insolvent insurance companies, LIGA receives policy documentation from either the liquidator or from the insolvent company. In some cases, as in the present case, the policies are no longer available.[4]

In support of its motion for summary judgment, SSA Gulf relied on documents produced by LIGA in a separate litigation in which SSA Gulf and LIGA were parties.[5] SSA Gulf issued requests for production of documents to LIGA, seeking all AMLICO and ENIC polices issued to SSA Gulf for operations in Louisiana between January 1, 1958 and December 31, 1975. LIGA produced numerous policies, partial policies and other documents, but LIGA was unable to produce any policies issued by AMLICO or ENIC for SSA Gulf's operations in Louisiana that contained the Exclusion.

In lieu of the actual policies, LIGA introduced certain secondary and circumstantial evidence in support of its motion for summary judgment and in

---

[4] The record reflects that AMLICO became insolvent in 1989, and ENIC in 1994.

[5] *See Clarence Wilson, Sr. v Cooper/T. Smith Stevedoring Co., Inc. et al.* No. 2020-0813 c/w 2020-1730. Division D on the docket of Civil District Court for the Parish of Orleans. Mr. Wilson, also employed by SSA Gulf as a longshoreman in New Orleans, filed suit for his pre-September 1975 exposure to asbestos.

opposition to SSA Gulf's motion for summary judgment. Specifically, LIGA submitted a copy of a blank Standard Form Policy, which contained the Exclusion. LIGA also introduced an NCCI Standard Form Policy (containing the Exclusion) issued by AMLICO to an unrelated insured for operations in Louisiana. LIGA contends that this exhibit demonstrates that the Standard Form Policy was in use by AMLICO prior to 1984.

In support of its reliance on the Standard Form Policy, LIGA presented the affidavit of Donald T. DeCarlo ("Mr. DeCarlo"), former Vice President and General Counsel for the NCCI from 1972 to 1986. Mr. DeCarlo stated that the NCCI was licensed in the State of Louisiana from 1956 to 1974, and as members of the NCCI, AMLICO and ENIC would have been required to use the 1954 Standard Form Policy that contained the Exclusion.[6] Mr. DeCarlo explained that in his search, he found no approved NCCI form endorsements that would have allowed a member to waive or modify the Exclusion. However, Mr. DeCarlo further stated that a Standard Form Policy could be modified by endorsement if approved by the NCCI.

LIGA also introduced the affidavit of its claims examiner, James Richard Mayfield ("Mr. Mayfield"), attaching certain policy-related documents from LIGA's files. After conducting a digital and physical search of LIGA's records, Mr. Mayfield acknowledged that he was unable to locate a WC/EL policy issued to SSA Gulf by AMLICO or ENIC in the State of Louisiana that contained the Exclusion. However, LIGA maintains that the other policy-related documentation (attached to Mr. Mayfield's affidavit) demonstrates that the Standard Form Policy was in use by both AMLICO and ENIC in Louisiana between 1957 and 1984.

---

[6] The Exclusion was eliminated when the Standard Form Policy was revised in 1984.

14

Mr. Mayfield's affidavit included the following exhibits:

Exhibit A-1, a 1965 AMLICO Standard Form Policy, containing the Exclusion. SSA Gulf objected based on the fact that the policy was issued to an unrelated insured and was also written to cover certain personnel (clerical employees, drivers, etc.) having no similarity to the stevedoring operations of SSA Gulf. LIGA asserts that this policy establishes that the Standard Form Policy was in use by AMLICO in Louisiana prior to 1984.

Exhibit A-2, a 1976 policy (partially illegible), which appears to be a policy issued by ENIC to SSA Gulf. SSA Gulf objected to its relevance, asserting that the policy does not include the Exclusion.[7] Additionally, SSA Gulf noted that the policy was written in 1976, while SSA Gulf became immune from plaintiffs' tort claims after September 1, 1975.

Exhibit A-3, a 1978 policy issued by Employers Casualty Co ("ECC"), an affiliate of ENIC, to SSA Gulf for operations in North Carolina. SSA Gulf objected to the relevancy of this document because: 1) ECC is not an insurer at issue here; 2) the named insured on the policy is Stevedores, Inc., a corporation unrelated to SSA Gulf;[8] 3) the policy covers operations in North Carolina; and 4) the policy period is beyond the relevant exposure period, which ended September 1, 1975. LIGA counters, arguing that same Standard Form Policy would have been used in both Louisiana and North Carolina, and also that the policy demonstrates that an affiliate of ENIC used the Standard Form language in a policy issued to SSA Gulf.

---

[7] LIGA acknowledges that the document was produced by the ENIC Liquidator and it does not include any Standard Form Policy language.

[8] We note that the policy is issued to "Stevedores, Inc. A Joint Venture c/o Ryan-Walsh Stevedoring Co." As previously noted, Ryan-Walsh Stevedoring Co. is a predecessor of SSA Gulf.

Exhibit A-4, an excerpt from a Commercial General Liability ("CGL") policy issued by ENIC to SSA Gulf. SSA Gulf again raised relevancy here as the policy is not a WC/EL policy.

Exhibit A-5, an excerpt of the Exclusion contained in a blank Standard Form Policy. SSA asserted that there is no evidence to suggest that this Exclusion was contained in a policy issued by AMLICO or ENIC to SSA Gulf.

SSA Gulf opposed the documentation submitted by LIGA, arguing that this secondary evidence was insufficient to satisfy LIGA's burden to show the existence and applicability of the Exclusion. In support of their motion for summary judgment, SSA Gulf introduced the August 26, 2021 deposition testimony of LIGA's claims adjuster, Malcolm Twiner, Jr. ("Mr. Twiner").[9] Mr. Twiner testified that he never saw an AMLICO or ENIC policy issued to SSA Gulf in Louisiana during the years in question that contained the Exclusion. He did identify a policy issued outside of Louisiana in 1976 that contained the Exclusion. Mr. Twiner further stated that any policy can add an endorsement to remove an exclusion. He noted that most policies have some type of endorsement.

SSA Gulf further argued that Mr. Mayfield, also deposed in the *Clarence Wilson* case on October 13, 2021, testified that he never saw an AMLICO or ENIC policy issued to SSA Gulf applicable to Louisiana for exposures up to 1975 that contained the Exclusion. Moreover, Mr. Mayfield reiterated Mr. Twiner's testimony that Standard Form Policies can have amendments or endorsements.

LIGA also asserts in this appeal that the trial court erred in granting SSA Gulf's motion for summary judgment because SSA Gulf failed to carry its burden to prove that policies were issued by AMLICO and ENIC to provide coverage to

---

[9] Mr. Twiner's deposition was taken in the *Clarence Wilson* case, referenced above.

SSA Gulf, (citing *Numa C Hero & Sons, LLP Through Hero v. Brit UW Limited*, 2022-0405, p. 6 (La. App. 4 Cir. 12/2/22), 356 So.3d 480, 483, holding that "the party seeking insurance coverage bears the burden not only proving a relevant, existing policy, but also, coverage under that policy."). We find no merit in LIGA's argument.

Although the actual policies from the two insolvent insurers could not be produced, the record before us demonstrates that AMLICO and ENIC provided coverage to SSA Gulf for the years in question. Mr. Mayfield testified that after his search, no AMLICO policies directly pertaining to SSA Gulf were located. However, he explained that records found in LIGA's possession pertaining to AMLICO coverages issued to SSA Gulf consist of index cards provided by the AMLICO Liquidator.[10] LIGA has acknowledged that the index cards indicate that WC policies were provided by AMLICO to SSA Gulf from the 1930's through July 1, 1972. Mr. Mayfield further stated in his affidavit that certain non-policy documents in LIGA's possession, including correspondence and affidavits, suggest that ENIC may have afforded coverage to SSA Gulf for Louisiana operations beginning January 1, 1970 through 1986.

Mr. Mayfield also testified that LIGA's records show that since 2005, LIGA accepted approximately 83 cases for SSA Gulf in similar occupational disease cases. A copy of LIGA's spreadsheet of accepted cases was attached to Mr. Mayfield's deposition. Mr. Twiner acknowledged in his deposition testimony that LIGA accepted approximately 60 cases for SSA Gulf.

---

[10] Counsel for LIGA explained at trial that the index cards from AMLICO show the year, policy number, type of coverage, and dates of coverage.

17

For the foregoing reasons, and pursuant to our *de novo* review, we find no error on the part of the trial court in denying LIGA's motion for summary judgment and granting summary judgment in favor of SSA Gulf. The record before us demonstrates that SSA Gulf carried its burden to show the existence of coverage from AMLICO and ENIC for the years in question. Additionally, the record contains no evidence that any policy issued to SSA Gulf by AMLICO or ENIC contained the Exclusion. Thus, LIGA failed to carry its burden of showing the existence and applicability of the Exclusion.

In concluding that LIGA failed to carry its burden to show that the relevant policies contained the Exclusion, the alternative rulings set forth in the May 17, 2023 judgment (concerning the applicability of Coverage A and whether the Exclusion should be considered an impossible or unenforceable condition) are rendered moot. Thus, we pretermit any discussion on those issues.

***The Exception of Lack of Subject Matter Jurisdiction***

LIGA argued in its exception that SSA Gulf's alternative claim under the Coverage A section of the policies would fall under the exclusive jurisdiction of the OWC. However, our finding that Coverage A is not implicated here pretermits any further examination of this claim. Accordingly, after reviewing the trial court's interlocutory judgment under our supervisory jurisdiction, the writ is denied.

**DECREE**

For the foregoing reasons, we affirm the March 15, 2022 judgment denying LIGA's motion for summary judgment. We affirm, in part, the May 17, 2023 judgment granting summary judgment in favor of SSA Gulf. We convert the

appeal of the denial of LIGA's exception of lack of subject matter jurisdiction to an application of supervisory writ. We grant the writ and deny the relief requested.

**AFFIRMED IN PART; APPEAL CONVERTED TO AN APPLICATION FOR SUPERVISORY WRIT; WRIT GRANTED; RELIEF DENIED**